ESTATE OF DAVID DAVIS IV, DECEASED, DAVID DAVIS V, EXECUTOR, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2383-82.          Filed June 11, 1986.

*Robert M. Bellatti* and *David J. Duez*, for the petitioner.
*Matthew J. Fritz*, for the respondent.

SHIELDS, *Judge*: Respondent determined a deficiency in petitioner's Federal estate tax in the amount of $1,332,388.48. The issues for decision are: (1) Whether petitioner is entitled to use the special use valuation for certain farm properties under section 2032A;[1] and (2) whether the testamentary trust created by decedent for his surviving wife qualifies for the marital deduction under section 2056(b)(5).

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by reference.

David Davis IV (hereinafter referred to as decedent) died testate on April 14, 1978, a resident of Bloomington, Illinois. His son, David Davis V, thereafter qualified before a local court as the executor of his estate (petitioner). The son also resided in Bloomington when the petition herein was filed. A timely estate tax return was filed for petitioner with the District Director of Internal Revenue at Springfield, Illinois.

Decedent was an attorney and a former member of the Illinois State Legislature. He was survived by his widow, Nancy S. Davis, and their two children, a daughter, Elizabeth Davis Kater, and the son, David Davis V. He was

---

[1]All section references are to the Internal Revenue Code of 1954 as amended and in effect at the time of decedent's death, Apr. 14, 1978, unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure unless otherwise provided.

also survived by another daughter, Alice Davis Cates, from a previous marriage, and by five grandchildren.

Decedent drafted his own will which contained two trusts. The first, a trust for Nancy, is set forth in the eighth clause of the will as follows:

I give, devise and bequeath unto my son, DAVID DAVIS, V., and my daughter, ELIZABETH DAVIS KATER, as Trustees and their successors, such portion of the rest, residue and remainder of my estate as will when added to the value of our residence devised to my wife pursuant to clause *Second* of this Will have a value, as finally determined for Federal Estate Tax purposes, of two million, three hundred thousand dollars ($2,300,000.00). Said Trustees shall hold such property in trust for the uses and purposes hereinafter set forth. My Executor shall assign, convey and distribute to said Trustees the cash, securities and other property including real estate and interests therein which shall constitute this gift. The assets to be distributed in satisfaction of this clause shall be selected in such manner that the cash and other property distributed will have an aggregate fair market value fairly representative of the distributees' proportionate share of the appreciation of all property then available for distribution. Any property included in my estate at the time of my death and assigned or conveyed in kind to satisfy said bequest, shall be valued for that purpose at the value thereof as finally determined for Federal Estate Tax purposes; and any other property so assigned and conveyed shall be valued for that purpose at its cost. No asset nor the proceeds of any asset shall be included in said bequest as to which a marital deduction is not allowable if included. Said bequest shall abate to the extent that it cannot be satisfied in the manner herein provided.

*Powers of Trustees*: Said Trustees shall have the powers and authority given them by law and in addition thereto, shall have the powers and authority hereinafter, by this instrument, provided. The enunciation of powers in this instrument shall not be construed as a limitation upon the powers of the Trustees conferred by law, but as in addition thereto.

*Distribution of Income*: I direct that my said Trustees shall pay at least annually the entire net income from this trust to my wife, NANCY S. DAVIS, for and during the term of her natural life.

Should it be at any time necessary, in order to provide for unusual medical expenses or to enable my said wife to live in the manner to which she has been accustomed during my lifetime, I authorize the Trustees to pay to her or to use for her benefit such portion of the principal of this trust as said Trustees in their judgment shall deem necessary for that purpose.

*Power of Appointment*: I give to my said wife the power to appoint and direct, by Will, the disposition upon her death of the entire corpus of this trust or any part or portion thereof, free and clear of the limitations and provisions of the trust.

*Distribution of Principal*: In the event, however, that my said wife shall fail to exercise the power of appointment given her by the foregoing paragraph or shall exercise such power with respect to a portion of the corpus of this trust only, then I direct that upon her death my Trustees aforesaid shall convey all corpus of this trust not disposed of by direction of my wife as above provided to the then acting Trustees or Trustee of the trust provided for by clause *Ninth* of this Will, to be held according to the uses and purposes of that trust, and thereupon this trust shall cease and determine.

The second trust, which is for the primary use and benefit of the decedent's children, appears in the ninth clause of the will as follows:

The rest, residue and remainder of my estate, whether real, personal or mixed, and wherever situate, I give, devise and bequeath unto my son, DAVID DAVIS, V., and my daughter, ELIZABETH DAVIS KATER, as Trustees, in trust, however, for the following uses and purposes:

*Powers of Trustees*: Said Trustees shall have the powers and authority given them by law and in addition thereto, shall have the powers and authority hereinafter, by this instrument, provided. The enunciation of powers in this instrument shall not be construed as a limitation upon the powers of the Trustees conferred by law, but as in addition thereto.

*Distribution of Income*: I direct said Trustees to pay on or about July 29th of each year the sum of $1,000.00 to my daughter-in-law, Geneta B. Davis, and an equal amount to my son-in-law, James Kater, such payments to continue to each so long as she or he remains married to my son or daughter as the case may be, but to terminate upon divorce or the death of the spouse. Such payments shall be made from the net income of the trust. These payments shall begin in the third year following my death.

I direct said Trustees to pay twenty-six per cent (26%) of the net income of this trust not otherwise distributed to my daughter, ALICE DAVIS CATES, thirty-seven per cent (37%) thereof to my son, DAVID DAVIS, V., and thirty-seven per cent (37%) thereof to my daughter, ELIZABETH DAVIS KATER. Distribution of income shall be made annually or more frequently.

Upon the death of my daughter, Alice, my son, David, or my daughter, Elizabeth, during the term of this trust, the share of income of such decedent shall be paid as follows:

(a) If there is a spouse and a child or children of such decedent surviving, then one-half to the spouse and one-half to be used for the benefit of the children, in equal shares.

(b) If there is a spouse and no child surviving such decedent, then one-half to such spouse and the remaining one-half to my other descendants, per stirpes.

(c) If there is no spouse, but there is a child or are children surviving such decedent, then the decedent's share of income shall be distributed equally among his or her surviving descendants, per stirpes.

(d) If no spouse nor descendants survive the decedent, then the decedent's share shall be paid to my other descendants, per stirpes.

Upon the death or remarriage of the spouse of any of my said children who has died, distribution of income to such spouse shall cease and distribution of income thereafter shall be made as if such spouse had predeceased my deceased child.

Should it become necessary for the reasonable and comfortable support, education or medical care of any descendant of mine, then I authorize said Trustees, in their sole discretion, to use such portion of the principal for the benefit of such descendant as they may determine to be necessary. Principal so used shall be treated as an advance distribution to such descendant and shall be credited against the share of the trust to which he or she would be entitled, if any, upon final distribution.

This trust shall cease and determine upon the death of whichever of my three children last survives me.

During the term of the trust any one of my said children may at any time, or from time to time, by written instrument or by Will require the Trustees to convey and deliver to him or to her or to such other person or persons as he or she may designate a portion of the principal not exceeding in aggregate value the following to wit: with respect to Alice D. Cates 13% of the net value of the corpus of the trust; with respect to each of David Davis, V. and Elizabeth D. Kater 19% of the net value of the corpus of the trust. The Trustees shall have nine months from the date that demand in writing in this regard is made to them in which to make such conveyance and delivery. Income payable to any child requiring such distribution shall abate proportionately.

*Distribution of Principal*: Upon termination of this trust the Trustees shall make division of all of the assets of the trust and shall convey and deliver them as follows:

To the descendants of Alice D. Cates 26% thereof, less any amount previously paid over or distributed pursuant to the direction of my said daughter; to the descendants of my son David Davis, V. 37% of such assets, less any amount previously paid over or distributed pursuant to the direction of my said son, and; 37% to the descendants of my daughter, Elizabeth D. Kater, less any amount previously paid over or distributed pursuant to the direction of my said daughter.

In the event that my wife, Nancy S. Davis, has exercised the *"Power of Appointment"* granted her under the *Eighth* clause of this Will in such manner as to create a preference in favor of our daughter, Elizabeth, our son, David, or one or more of their descendants, thereby reducing the share distributable to descendants of my daughter, Alice, below the amount which would be distributable to them if such appointment had not been made, then, in that event, there shall be distributed to the descendants of my said daughter, Alice, a portion of this trust which will

in the best judgment of the Trustees making final distribution provide said descendants with substantially the same share of my total estate as they would have received if my said wife had not exercised the power of appointment so granted to her by the *Eighth* clause of this Will, and in that event the balance of the corpus of this trust shall be divided equally between the descendants of my son, David, and the descendants of my daughter, Elizabeth, per stirpes.

If there is no descendant of mine living at the time of termination of this trust, then the assets of this trust shall be apportioned and distributed as follows:

One-Fourth to the Trustees of the Second Presbyterian Church of Bloomington, Illinois, for the use of said Church as said Trustees may determine.

One-Fourth to the University of South Dakota Law School Foundation to endow a professorship at said Law School.

The remaining one-half to The National Bank of Bloomington, Illinois, to be held in trust by said bank, the principal to be kept invested and the income used to maintain and operate the Judge David Davis residence, now the property of the people of the State of Illinois. If said residence shall cease to exist or shall no longer be used as a public display, the Trustee shall use said income to support such charitable, religious and educational projects of the community as it may deem to be of greatest benefit to the people of the City of Bloomington and the surrounding communities.

In addition to the powers given to the trustees under the 8th and 9th clauses of the will, decedent also included trustee powers in the 13th clause as follows:

The provisions of this section shall apply equally to the trusts created by clauses *Eighth* and *Ninth* of this Will unless otherwise specifically provided. The Trustees thereof shall stand seized of all of the real estate, with full power to sell and convey or encumber the same; and shall manage, rent and control such real estate in all respects as a prudent owner would his own. They shall keep the major buildings on any real estate insured against loss by fire or windstorm and shall pay all taxes and assessments levied against the property of the trust before penalty accrued thereon. They shall have power to make such leases or other agreements for the operation of the land, as I might make, if living, and shall not be restricted to the lifetime of any beneficiary in fixing the term of any such lease or agreement.

\*    \*    \*    \*    \*    \*    \*

I further authorize my Trustees to borrow money secured by the lien of either trust fund or by mortgage upon all or any part of the trust property, real or personal, at any time when in the judgment of the Trustee or Trustees affected the best interests of the trust estate will be thereby promoted.

I authorize said Trustees to determine what is income with respect to each trust and what is principal, and to use income to pay any interest or principal due or payable on any indebtedness of either trust estate. I direct that dividends payable in stock shall be considered as an increment to the trust and not distributable as income to the beneficiaries.

Division of the corpus of the "Children's Trust" at the time of final distribution shall be left to the sole discretion of the Trustees whose judgment shall, in the absence of bad faith, be final. During the concurrence of terms of both trusts the Trustees of either trust may hold my property or any part or parcel thereof as tenant in common with the other trust or with another person or persons if such Trustees see fit so to do.

On the estate tax return, petitioner elected to use the special use value under section 2032A(a)(2) for certain farm property passing to the children's trust. At decedent's death, the fair market value of this farm property was $704,344.98 and its special use value was $204,344.98. Respondent disallowed the election because the ultimate remainder beneficiaries of the trust are admittedly not qualified heirs of the decedent under section 2032A(e)(1). The parties agree that the actuarial probability that none of decedent's descendants will survive his three children and the termination of the trust so as to permit the trust property to pass to the contingent remainder beneficiaries is only .0152.[2]

Respondent also determined that the trust for Nancy did not qualify for the marital deduction under section 2056.

OPINION

*Special Valuation Under Section 2032A*

In order to qualify for special use valuation under section 2032A(a)(2), real property must meet the requirements of section 2032A(b)(1), which provides that "For purposes of this section, the term 'qualified real property' means real property located in the United States which was acquired from or passed from the decedent to a qualified heir of the decedent." A qualified heir of the decedent is defined in section 2032A(e)(1) as being "a member of the decedent's

---

[2]The parties also agree that the actuarial probability that none of decedent's descendants will survive the 15-year recapture period provided by sec. 2032A(c) is only .000,000,000,0013. This figure, however, is not relevant to our inquiry.

family[3] who acquired such property (or to whom such property passed) from the decedent."

With respect to successive interests in property, section 20.2032A-8(a)(2), Estate Tax Regs., provides in pertinent part as follows:

*If successive interests (e.g. life estates and remainder interests) are created by a decedent in otherwise qualified property, an election under section 2032A is available only with respect to that property (or portion thereof) in which qualified heirs of the decedent receive all of the successive interests,* and such an election must include the interests of all of those heirs. For example, if a surviving spouse receives a life estate in otherwise qualified property and the spouse's brother receives a remainder interest in fee, no part of the property may be valued pursuant to an election under section 2032A. *Where successive interests in specially valued property are created, remainder interests are treated as being received by qualified heirs only if such remainder interests are not contingent upon surviving a nonfamily member or are not subject to divestment in favor of a nonfamily member.* [Emphasis added.]

It is the interpretation and validity of section 20.2032A-8(a)(2), Estate Tax Regs., which is at issue in this case.

Section 2032A was enacted as part of the Tax Reform Act of 1976. The legislative history accompanying new section 2032A clearly stated that the intended purpose of the statute was as a relief provision to permit continued farming or business operations by the decedent's family. This purpose was explained in the House Ways and Means Committee report which provided, in pertinent part:

Your committee believes that, when land is actually used for farming purposes or in other closely held businesses (both before and after the decedent's death), it is inappropriate to value the land on the basis of its potential "highest and best use" especially since it is desirable to encourage the continued use of property for farming and other small business purposes. Valuation on the basis of highest and best use, rather than actual use, may result in the imposition of substantially higher estate taxes. In some cases, the greater estate tax burden makes continuation of farming, or the closely held business activities, not feasible because the income potential from these activities is insufficient

---

[3]Sec. 2032A(e)(2) as in effect on the date of decedent's death provided:

The term "member of the family" means, with respect to any individual, only such individual's ancestor or lineal descendant, a lineal descendant of a grandparent of such individual, the spouse of such individual, or the spouse of any such descendant. For purposes of the preceding sentence, a legally adopted child of an individual shall be treated as a child of such individual by blood.

to service extended tax payments or loans obtained to pay the tax. Thus heirs may be forced to sell the land for development purposes. * * *

However, your committee recognizes that it would be a windfall to the beneficiaries of an estate to allow real property used for farming or closely held business purposes to be valued for estate tax purposes at its farm or business value unless the beneficiaries continue to use the property for farm or business purposes, at least for a reasonable period of time after the decedent's death. * * *

For these reasons, your committee has provided for special use valuation in situations involving real property used in farming or in certain other trades or businesses, but has further provided for recapture of the estate tax benefit where the land is prematurely sold or is converted to nonqualifying uses.

[H. Rept. 94-1380 (1976), 1976-3 C.B. (Vol. 3) 735, 755-756.]

This explanation was reiterated in both the Senate Finance Committee report and the Joint Committee report. Staff of Joint Comm. on Taxation, 94th Cong., 2d Sess., General Explanation of the Tax Reform Act of 1976 (1976), 1976-3 C.B. (Vol. 2) 1, 549; S. Rept. 94-938 (1976), 1976-3 C.B. (Vol. 3) 49, 657. Congressional desire to preserve family farms and businesses was again expressed in the legislative history of the Economic Recovery Tax Act of 1981. Staff of Joint Comm. on Taxation, 97th Cong., 1st Sess., General Explanation of the Economic Recovery Tax Act of 1981, at 244 (Comm. Print 1981); S. Rept. 97-144 (1981), 1981-2 C.B. 412, 463; H. Rept. 97-201 (1981), 1981-2 C.B. 352, 381.

In 1984, Congress expressed concern that the Internal Revenue Service was interpreting section 2032A in a more restrictive manner than contemplated by Congress. In a Senate floor amendment in which he proposed the perfection provision now contained in section 2032A(d)(3), Senator Dixon stated his views on Internal Revenue Service administrative policy under section 2032A:

The law and the report [the 1976 House Ways and Means Committee report] both state the public policy issue directly and forcefully. Congress wants to continue the family farm and small family-owned enterprises. Congress does not want the death of the owner of a family farm or a small family-operated business to force the sale of that farm or business if the family wants to stay in farming or the small business. The idea was to not permit the Federal estate tax to destroy farms or small businesses.

There seems to be people at the IRS, however, who are not interested in preserving family farms and small businesses, and who want to use

the slightest technicality to prevent an estate from being valued under the provisions of section 2032A.

[130 Cong. Rec. S4318 (1984).]

Section 2032A, as enacted and amended, did not specifically provide for the situation in which property passed from the decedent to successive interest holders in a trust. However, the legislative history of the statute clearly indicates that Congress intended section 2032A to apply where there were successive interests. Both the Joint Committee report and the House Ways and Means Committee report refer to successive interests in their discussion of liability for recapture tax. The Joint Committee report provides, in pertinent part:

> In general, if the qualified heir dies without having disposed of the property or converted it to a nonqualified use or a period of 15 years from the decedent's death lapses, the potential liability for recapture will cease. * * * However, if the decedent leaves qualified real property to two or more qualified heirs with successive interests in the property and the special use valuation is elected, potential liability for the recapture tax is not diminished, and none of the property is to be released from potential liability for the recapture tax, until the death of the last of the qualified heirs (or, if earlier, upon the expiration of 15 years from the date of the death of the decedent). [Staff of Joint Committee on Taxation, 94th Cong., 2d Sess., General Explanation of the Tax Reform Act of 1976 (1976), 1976-3 C.B. (Vol. 2) 1, 553-554.]

The House Ways and Means Committee report is substantially identical to the Joint Committee report. H. Rept. 94-1380 (1976), 1976-3 C.B. (Vol. 3) 735, 760. The legislative history further provides that in a trust situation property is "deemed to have passed from the decedent to a qualified heir to the extent that the qualified heir has a *present* interest in that trust property." (Emphasis added.) Staff of Joint Committee on Taxation, 94th Cong., 2d Sess., General Explanation of the Tax Reform Act of 1976 (1976), 1976-3 C.B. (Vol. 2) 1, 551; S. Rept. 94-1236 (1976), 1976-3 C.B. (Vol. 3) 807, 960.

"Present interest" was not defined in the legislative history of the Tax Reform Act of 1976. However, in the Economic Recovery Tax Act of 1981, Congress cited the definition of "present interest" used in the gift tax regulations. These regulations provided that a present interest was "An unrestricted right to the immediate use, posses-

sion, or enjoyment of property or income from property." Sec. 25.2503-3(b), Gift Tax Regs. Staff of Joint Comm. on Taxation, 97th Cong., 1st Sess., General Explanation of the Economic Recovery Tax Act of 1981, at 251 (Comm. Print 1981); H. Rept. 97-215 (Conf.) (1981), 1981-2 C.B. 481, 510; H. Rept. 97-201 (1981), 1981-2 C.B. 352, 380 n. 8. In the same legislation, Congress clarified that an election under section 2032A was available where property passed to a discretionary trust in which no qualified heir had a present interest if "*all* of the beneficiaries of [the trust] are qualified heirs." Sec. 2032A(g). See also Staff of Joint Comm. on Taxation, 97th Cong., 1st Sess., General Explanation of the Economic Recovery Tax Act of 1981, at 251 (Comm. Print 1981); H. Rept. 97-215 (Conf.) (1981), 1981-2 C.B. 481, 510; H. Rept. 97-201 (1981), 1981-2 C.B. 352, 380 n. 8. Neither the statute nor the legislative history requires that all successive beneficiaries be qualified heirs. However, the Secretary has added this requirement in section 20.2032A-8(a)(2), Estate Tax Regs.

Here, petitioner claims that section 20.2032A-8(a)(2), Estate Tax Regs., is invalid as applied to the property subject to testamentary disposition in this case. The testamentary disposition in the decedent's will which might result in a nonqualified taker, i.e., the charitable beneficiaries, was obviously added to prevent the ultimate disposition of the property to unintended takers, including the State, by escheat. Until a disposition to the charitable beneficiaries occurs which is, in effect, a default to prevent disposition to unintended takers, the scheme of the statute is complied with. Only when the default occurs, which is an event of remote possibility, is there a problem, if at all, then. Any estate planner "worth his salt" will insert a provision to cure default by providing for a taker in default to prevent disposition of the property by intestacy. However, in order to comply with the requirement imposed by the Secretary, the estate planner must ignore prevailing wisdom in testamentary planning.

In this case, as we have pointed out, the decedent created remainder interests in his grandchildren or their descendants, all qualified heirs, and with three living children and five living grandchildren, the possibility that the

nonqualified class of contingent beneficiaries would succeed to the property is exceedingly remote.[4] Where there is an obvious and continuing effort by a testator to comply with the requirements of section 2032A, as we believe there was here, a pragmatic approach should be taken where successive interests are concerned. Otherwise, the use of successive interests is obviated unless the testator is willing to permit intestacy in the event of a default in the succession of qualified heirs. We do not think Congress intended this result and doubt if it was even considered at the time the statute was drafted. We believe that a "wait and see" approach more clearly effects the intent of Congress as expressed in the legislative history of section 2032A.[5]

In view of the foregoing, we are satisfied that when respondent's regulation is applied to the facts of this particular case, it leads to an absurd result and thwarts the obvious purpose of Congress in the enactment of section 2032A as clearly set out in the legislative history of the section. We conclude, therefore, that petitioner is entitled to the special use valuation provided by section 2032A since respondent's regulation is plainly inconsistent with the

---

[4]We express no opinion as to the proper tax treatment if the possibility in favor of a nonqualified class of beneficiaries were materially less remote.

[5]The statements in the legislative history of the Deficit Reduction Act of 1984 relating to successive interests are not, we feel, inconsistent with our view and conclusions here. The Joint Committee report specifically acknowledged the existence of the requirement that qualified heirs receive all successive interests under sec. 20.2032A-8(a)(2), Estate Tax Regs., stating:

"Congress was aware that Treasury regulations under the current use valuation provision require that, when successive interests are created in specially valued property, all parties with any interest in the property must be qualified heirs and all such parties must enter into the agreement to the election, regardless of the relative values of their interests. The de minimis rule established in this provision was intended to apply solely as a guideline in determining whether perfection of an agreement is to be permitted. This rule was not intended to give rise to an inference that parties having an interest in specially valued property that has a relatively small value are not required to enter into the agreement, or that such persons need not be qualified heirs." [Staff of Joint Comm. on Taxation, 98th Cong., 2d Sess., General Explanation of the Deficit Reduction Act of 1984, at 1124 n. 23 (Comm. Print 1984).]

It should be noted that the first sentence of this footnote modified the language of the Conference Committee which stated that:

"The conferees are aware that the current use valuation provision required that, when successive interests or concurrent interests are created in specially valued property, all parties with any interest in the property must be qualified heirs and all such parties must enter into the agreement to the election, regardless of the relative values of their interests. * * *"[H. Rept. 98-861, at 1241 n. 1 (Conf.) (1984).]

The modification in the Joint Committee report relates that the requirement that only qualified heirs may be successive interest holders is by administrative and not legislative fiat. We do not read the language of the Joint Committee report as approval of the regulation.

underlying statute and to that extent is invalid. *Commissioner v. South Texas Lumber Co.*, 333 U.S. 496, 501 (1948); *Edward L. Stephenson Trust v. Commissioner*, 81 T.C. 283, 287 (1983).

## Marital Deduction

We now turn to the question of whether the trust created under decedent's will for the benefit of his widow qualifies for the marital deduction under section 2056(b)(5). In this connection, we will focus primarily upon three of the will clauses: the 8th, which establishes a trust for decedent's wife, Nancy (the marital trust); the 9th, which establishes a trust for decedent's children (the children's trust); and the 13th, which details the powers of the trustees of both trusts.

Two of decedent's children, David and Elizabeth, are designated as trustees of the marital trust. The trustees are to pay "the entire net income" from the trust to the surviving wife, Nancy, "at least annually" during her natural life. Nancy is also granted the power to appoint by will the corpus of the marital trust free of any of the limitations and provisions of the trust. The 9th clause provides, however, that if Nancy exercises the power of appointment in her trust in such a way as to create a preference in favor of Elizabeth or David, over Alice (a third child of decedent from a previous marriage), the property in the children's trust is to be distributed in such a manner as to provide decedent's three children or their descendants with substantially the same share of the decedent's total estate as they would have received if Nancy had not exercised her power of appointment.

David and Elizabeth are also designated as trustees of the children's trust. The "net income" and the corpus of this trust is to pass to decedent's three children, 26 percent to Alice, 37 percent to David, and 37 percent to Elizabeth.

Under the will, the trustees of each trust have all trust powers provided by law plus certain specific powers set forth in the 13th clause including the power to encumber properties in both trusts and to borrow money secured by a lien on either trust fund, or any trust property. In addition, the trustees are empowered to determine what is income

and what is principal with respect to the trusts and to use income "to pay any interest or principal due or payable on any indebtedness of either trust estate."

Respondent views the disposition in the 8th clause of "the entire net income" of the trust to decedent's wife as not being equivalent to a bequest of "all the income" as required by section 2056(b). He points out that decedent's intention with respect to the term "income" is not clear because he used the term in at least three different ways in the will. Respondent further contends that the income the widow is to receive under the marital trust could be diverted with the powers decedent granted to the trustees in the 13th clause. In this respect, respondent notes that while the trustees of Nancy's trust are her children and normally would be expected to be sympathetic to her needs, the children still have a conflicting interest under their own trust and might favor their interest at the expense of Nancy. Respondent also argues that Nancy's power of appointment is limited by the provision in the 9th clause that if she acts to favor the children of decedent and herself, over Alice, decedent's child from the previous marriage, then the assets of the children's trust are to be distributed so far as possible in such a manner as to treat Alice or her descendants in the same manner as they would have been treated without the exercise of the power. Respondent alternatively argues that 26 percent of the property passing into the marital trust is not eligible for the marital deduction because the 9th clause deprives the widow of the right to exercise alone and in all events the power to appoint that amount (equal to Alice's portion of the children's trust). Respondent concludes that all of these factors serve to indicate that while decedent may have intended to take advantage of the marital deduction provisions, he did not give his widow sufficient rights to satisfy the requirements of section 2056.

Petitioner contends that decedent's will evidences a well-reasoned estate plan designed by decedent to leave his widow with her share of their combined income prior to decedent's death and insists that the 8th clause can only be interpreted as providing that all the income of the marital trust passes to decedent's widow.

Petitioner further contends that the decedent's grant of broad powers to the trustees is not an indication that he did not wish to have Nancy's trust qualify for the marital deduction because, according to petitioner, the language granting broad powers to the trustees was "boiler plate" language, frequently used by decedent in drafting wills for his clients.[6] Petitioner also notes that even under respondent's own regulation, section 20.2056(b)-5(f)(4), Estate Tax Regs., the grant of broad administrative powers to a trustee is not to be viewed as impairing a marital deduction. Finally, petitioner contends that the conditions imposed by the will upon the property in the children's trust are irrelevant to the question of the tax treatment of the property in the marital trust.

Section 2056 allows as a deduction from the value of the gross estate an amount equal to the value of any interest in property included in the estate which passes or has passed to the decedent's surviving spouse. Section 2056(b)(1)[7] provides that the deduction shall not be allowed if the interest passing to the surviving spouse is a life estate or other terminable interest. However, under section 2056(b)(5), the deduction is allowable "In the case of an interest in property passing from the decedent, if his surviving spouse is entitled for life to all the income from the entire interest, or all the income from a specific portion thereof * * * with power in the surviving spouse to appoint the entire interest, or such specific portion." Section 20.2056(b)-5(a), Estate Tax Regs., provides that in order to qualify for the marital deduction under section 2056(b)(5) as a life estate with power of appointment, the interest passing to the surviving spouse must satisfy the following conditions:

(1) The surviving spouse must be entitled for life to all of the income from the entire interest or a specific portion of the entire interest, or to a specific portion of all the income from the entire interest.

(2) The income payable to the surviving spouse must be payable annually or at more frequent intervals.

---

[6]We need not determine the relevance of such language in other wills prepared by decedent because the use of such language does not affect the determination made herein.

[7]Sec. 2056(b)(1) provides:

(1) GENERAL RULE.—Where, on the lapse of time, on the occurrence of an event or contingency, or on the failure of an event or contingency to occur, an interest passing to the surviving spouse will terminate or fail, no deduction shall be allowed under this section with respect to such interest.

(3) The surviving spouse must have the power to appoint the entire interest or the specific portion to either herself or her estate.

(4) The power in the surviving spouse must be exercisable by her alone and (whether exercisable by will or during life) must be exercisable in all events.

(5) The entire interest or the specific portion must not be subject to a power in any other person to appoint any part to any person other than the surviving spouse.

To assist in determining whether a spouse has received the requisite amount of income under section 2056(b)(5), respondent has issued section 20.2056(b)-5(f)(1), Estate Tax Regs., which reads as follows:

(f) Right to income. (1) If an interest is transferred in trust, the surviving spouse is "entitled for life to all of the income from the entire interest or a specific portion of the entire interest," for the purpose of the condition set forth in paragraph (a)(1) of this section, if the effect of the trust is to give her substantially that degree of beneficial enjoyment of the trust property during her life which the principles of law of trusts accord to a person who is unqualifiedly designated as the life beneficiary of a trust. Such degree of enjoyment is given only if it was the decedent's intention, as manifested by the terms of the trust instrument and the surrounding circumstances, that the trust should produce for the surviving spouse during her life such an income, or that the spouse should have such use of the trust property as is consistent with the value of the trust corpus and with its preservation. The designation of the spouse as sole income beneficiary for life of the entire interest or a specific portion of the entire interest will be sufficient to qualify the trust unless the terms of the trust and the surrounding circumstances considered as a whole evidence an intention to deprive the spouse of the requisite degree of enjoyment. In determining whether a trust evidences that intention, the treatment required or permitted with respect to individual items must be considered in relation to the entire system provided for the administration of the trust.

Section 20.2056(b)-5(f)(7), Estate Tax Regs., also provides:

(7) An interest passing in trust fails to satisfy the condition set forth in paragraph (a)(1) of this section, that the spouse be entitled to all the income, to the extent that the income is required to be accumulated in whole or in part or may be accumulated in the discretion of any person other than the surviving spouse; to the extent that the consent of any person other than the surviving spouse is required as a condition precedent to distribution of the income; or to the extent that any person other than the surviving spouse has the power to alter the terms of the trust so as to deprive her of her right to the income. An interest passing in trust will not fail to satisfy the condition that the spouse be entitled to all the income merely because its terms provide that the right of the

surviving spouse to the income shall not be subject to assignment, alienation, pledge, attachment or claims of creditors.

Section 20.2056(b)-5(f)(4), Estate Tax Regs., deals with the effect of a trustee's administrative powers on a marital deduction as follows:

(4) Provisions granting administrative powers to the trustee will not have the effect of disqualifying an interest passing in trust unless the grant of powers evidences the intention to deprive the surviving spouse of the beneficial enjoyment required by the statute. Such an intention will not be considered to exist if the entire terms of the instrument are such that the local courts will impose reasonable limitations upon the exercise of the powers. Among the powers which if subject to reasonable limitations will not disqualify the interest passing in trust are the power to determine the allocation or apportionment of receipts and disbursements between income and corpus, the power to apply the income or corpus for the benefit of the spouse, and the power to retain the assets passing to the trust. For example, a power to retain trust assets which consist substantially of unproductive property will not disqualify the interest if the applicable rules for the administration of the trust require, or permit the spouse to require, that the trustee either make the property productive or convert it within a reasonable time. Nor will such a power disqualify the interest if the applicable rules for administration of the trust require the trustee to use the degree of judgment and care in the exercise of the power which a prudent man would use if he were owner of the trust assets. Further, a power to retain a residence or other property for the personal use of the spouse will not disqualify the interest passing in trust.

Under the will, Nancy is to receive "the entire net income" of her trust. Net income for tax purposes is "Income subject to taxation after allowable deductions and exemptions have been subtracted from gross or total income." Black's Law Dictionary 938 (5th ed. 1981). Unless otherwise provided, in a typical trust, income passes to the trust beneficiary after expenses, e.g., taxes, and trustee's fees are paid. G. Bogert, Trusts & Trustees, secs. 801-810 (2d ed. revised). Thus, the trust income received by the beneficiary is the "net income," or the income that remains after trust expenses are paid. Consequently, the "entire net income" of Nancy's trust was all the income of the trust as required under section 2056(b).

However, respondent also argues that funds from the marital trust can be diverted under the 13th clause,

resulting in Nancy's receiving less than the amount required under section 2056(b). Respondent refers to the following language:

> I further authorize my Trustees to borrow money secured by the lien of either trust fund or by mortgage upon all or any part of the trust property, real or personal, at any time when in the judgment of the Trustee or Trustees affected the best interests of the trust estate will be thereby promoted.
>
> I authorize said Trustees to determine what is income with respect to each trust and what is principal, and to use income to pay any interest or principal due or payable on any indebtedness of either trust estate. I direct that dividends payable in stock shall be considered as an increment to the trust and not distributable as income to the beneficiaries.

According to respondent, these provisions authorize the trustees: (1) To encumber either trust but particularly the marital trust with a loan for the benefit of the other; or (2) to pay income from the marital trust on indebtedness of the children's trust. We cannot agree. Examination of the entire will and especially the 13th clause clearly indicates that these provisions were intended to provide the trustees with powers as broad as possible in order to enable them to effectuate decedent's intent with respect to each separate trust, and, as noted by petitioner, in section 20.2056(b)-5(f)(4), Estate Tax Regs., respondent has recognized that administrative powers granted to a trustee are not to be viewed as impairing a marital deduction "unless the grant of powers evidences the intention to deprive the surviving spouse of the beneficial enjoyment [of the property] required by the statute." Again, reference to the entire will clearly indicates that decedent intended for his wife to have the full beneficial enjoyment of the property in her trust. This is evidenced by his bequest to her of "the entire net income" of the trust and the provision that trust principal was to be paid to his wife if needed for medical expenses or to enable her "to live in the manner to which she has been accustomed during my lifetime ." Cf. *Estate of Weisberger v. Commissioner*, 29 T.C. 217 (1957). We are required to ascertain his intention from the terms of the will itself and to give effect to such intent. *Wielert v. Larson*, 84 Ill. App. 3d 151, 404 N.E.2d 1111 (1980).

We also disagree with respondent that the estate's qualification for a marital deduction should be disallowed because Elizabeth and David as trustees of the marital trust can act so as to favor their personal interest in the children's trust to the detriment of Nancy's interest in the marital trust. Respondent overlooks the fact that the children, as trustees, are bound by strict fiduciary principles to exercise their duties in a reasonable and objective manner. G. Bogert, Trusts & Trustees, secs. 541-544 (2d ed. revised).

Finally, we reject respondent's contention that Nancy's power of appointment under the 8th clause of the will is limited by the provision in the 9th clause that if Nancy exercises her power of appointment in such a manner as to favor Elizabeth and David over Alice, then the assets of the children's trust are to be distributed to the extent possible so as to treat Alice or her descendants in the same manner as they would have been treated if the power had not been exercised.

In each case cited by respondent on this point, it is clear that there was a direct limitation upon the surviving spouse's exercise of her power. In *Winkle v. United States*, 381 F. Supp. 536 (S.D. Ohio 1974), the surviving spouse received a life estate in stock in a family corporation but a marital deduction was denied because the spouse did not receive a power of appointment over the stock which was exercisable alone and in all events. Instead, the corporation had the right to buy the stock if she (1) desired to sell it, (2) became legally incapacitated, (3) became bankrupt, or (4) left the corporation.

The marital deduction was also denied in *Batterton v. United States*, 287 F. Supp. 681 (M.D. Fla. 1968), because the property in which the surviving spouse received a life estate could be sold only for a fair consideration and could be given only to public charities. Thus, the spouse's power of appointment was severely limited.

In *Estate of Johnson v. Commissioner*, T.C. Memo. 1977-123, the marital deduction was denied because the surviving spouse could not appoint the property for the benefit of her husband should she remarry. Hence, her

power of appointment was not exercisable "in all events" as required by section 20.2056(b)-5(a), Estate Tax Regs.

The case before us is clearly distinguishable from the above cases. Here there is no limitation upon the widow's power. The will simply provides:

*Power of Appointment*: I give to my said wife the power to appoint and direct, by Will, the disposition upon her death of the entire corpus of this trust or any part or portion thereof, free and clear of the limitations and provisions of the trust.

The surviving spouse has the power to appoint the property to whomever she wishes without the prior approval of anyone. Therefore, the power is exercisable by her alone and in all events,and the fact that her exercise of the power might result in a change in the distribution of the corpus of the children's trust has no bearing upon the treatment to be given the marital trust property.[8] We conclude, therefore, that the property passing to the trust for Nancy qualifies for the marital deduction under section 2056(b)(5).

We have considered the remainder of respondent's contentions and find them unpersuasive.

*Decision will be entered under Rule 155.*

Reviewed by the Court.

NIMS, WHITAKER, KÖRNER, HAMBLEN, SWIFT, CLAPP, JACOBS, WRIGHT, PARR, and WILLIAMS, *JJ.*, agree with the majority opinion.

GERBER, *J.*, did not participate in the consideration of this case.

---

HAMBLEN, *J.*, concurring: When Congress clearly demonstrates an intent to preserve an institution, such as the family farm and family owned businesses, a commonsense approach should be applied, and the technical inadequacies of the statute should be subservient to the overriding congressional intent. The majority opinion does that today

---

[8]In view of our determination that the disposition of the children's trust has no bearing on the treatment of the marital trust property, we need not address respondent's alternative contention that 26 percent of the property passing into the marital trust is not eligible for the marital deduction.

in its opinion under section 2032A. I respectfully concur in that opinion.

---

SIMPSON, *J.*, dissenting: In my judgment, the majority, in its overwhelming desire to avoid an unfortunate result in this case, has ignored the clear meaning of the statute and has invalidated a Treasury regulation without sufficient cause, and accordingly, I must dissent.

Section 2032A(b)(1) provides in part that "qualified real property" must be real property that "was acquired from or passed from the decedent to a qualified heir of the decedent." The statute clearly requires that a taker be a qualified heir, and although the statute has been reexamined by Congress several times since it was enacted in 1976, no exception has been made to this requirement. In fact, although other requirements have been relaxed, the committee reports make clear that there was no intention to relax this requirement:

> The conferees are aware that the current use valuation provision requires that, when successive interests or concurrent interests are created in specially valued property, all parties with any interest in the property must be qualified heirs and all such parties must enter into the agreement to the election, regardless of the relative values of their interests. The de minimis rule established in this provision is intended to apply solely as a guideline in determining whether perfection of an agreement is to be permitted. The guideline is not intended to give rise to an inference that parties having an interest in specially valued property which has a relatively small value are not required to enter into the agreement or that such persons need not be qualified heirs. [H. Rept. 98-861 (Conf.) (1984), 1984-3 C.B. (Vol. 2) 1, 495 n. 1.]

See also Staff of Joint Comm. on Taxation, 98th Cong., 2d Sess., General Explanation of the Revenue Provisions of the Deficit Reduction Act of 1984, at 1124 n. 23 (Comm. Print 1984). In this statement by the Conference Committee, it is clear that Congress recognized that successive interests could be created in specially valued property, but *all parties with any interest in the property must* be qualified heirs. See also H. Rept. 94-1380 (1976), 1976-3 C.B. (Vol. 3) 735, 760.

The majority opinion is strangely devoid of rationale. The majority does not deal with the specific words of the statute and offers no explanation of how it is to be interpreted to reach their result. Although the majority here may intend to limit its holding to a case involving facts substantially similar to those of this case, some members of the Court appear to believe that if the first taker is a qualified heir, the gift qualifies, regardless of who takes the successive interests or regardless of how likely the successors will take. See *Estate of Clinard v. Commissioner*, 86 T.C. 1180, filed on the same date as this opinion. However, requiring that only the first taker be a qualified heir is clearly inconsistent with the words of the statute and the legislative history. Moreover, if the intent is to limit the holding to the facts of this case, where is the line to be drawn: Does the majority intend an exception only when the gift to a nonqualified heir follows two successive life interests in qualified heirs? What if there is a gift to a single life beneficiary who is a qualified heir and then a gift to a nonqualified heir—does the life expectancy of the first of the successive beneficiaries make a difference? Under this opinion, the bar is completely without guidance as to what types of gifts may be made to successive takers.

In reaching its conclusion, the majority relies on general statements in the legislative history of Congress' intent to preserve family farms and businesses and the apparent need of testators to provide for contingent beneficiaries in the event of failure of qualified heirs. This reasoning is unpersuasive. Generalized statements of broad congressional intent are no substitute for an analysis of the operation of the section and the particular statutory requirement involved here. Indeed, the very complexity of section 2032A, with its numerous, detailed prerequisites to the availability of special use valuation, reveals that Congress was not making the benefit generally available; it placed a number of technical restrictions on the availability of the tax benefit. Moreover, that Congress has since decided to allow the correction of certain defects in the making of the election of special use valuation (sec. 1025, Deficit Reduction Act of 1984, Pub. L. 98-369, 98 Stat. 494, 1030) in no

way suggests that it intended to loosen the substantive requirements for the election; that the substantive restrictions were to remain was made abundantly clear by Congress when it enacted the change. H. Rept. 98-861, *supra*, 1984-3 C.B. (Vol. 2) at 495 n. 1.

Furthermore, testators and their estate planners are not compelled to include nonqualified heirs as contingent beneficiaries; the need for nonqualified takers in the event of default of qualified heirs arises only because the testator has chosen to require that qualified heirs survive some contingency (in this case, the death of the testator's last surviving child). A testator may qualify his property for special use valuation by devising all interests, including present and future interests, to qualified heirs.

The holding of the majority will frustrate the objectives of section 2032A. The section is designed to help families retain property used as a farm or for a small business. The estate tax is reduced, but to qualify for that tax savings, the property must be retained in the family and must be used for one of the specified purposes for the specified period. Thus, section 2032A permits a special use valuation if the property is acquired by or passes to a qualified heir(s) only on condition that "each person in being who has an interest (whether or not in possession) in any property designated in" a written agreement consents "to the application of subsection (c) with respect to such property." Sec. 2032A(d)(2). Subsection (c) imposes an additional estate tax liability to recapture all or a part of the benefit conferred by the special use valuation "If, within 15 years [now 10 years for estates of decedents dying after December 31, 1981] after the decedent's death *and before the death of the qualified heir*," the qualifying heir makes a disposition of the property other than to a member of his family or ceases to use the property for a qualified use. Sec. 2032A(c)(1); emphasis added.

Where the testator does not create any successive interest in the property—for example, where the property is left to the testator's child outright—the special use valuation benefit is, in essence, recaptured even if the child dies within the statutory period because the property is includ-

able in the child's gross estate at its fair market value (unless another election is made under section 2032A). However, where the testator creates successive interests in the property—for example, a life estate and a remainder— there will be no recapture of the special use valuation benefit or inclusion of the property in the life tenant's gross estate upon the life tenant's death within the statutory period, and unless the remainderman is a qualified heir, all possibility of recapture ceases. It is for this reason that section 20.2032A-8(a)(2), Estate Tax Regs., requires that all successive interests pass to qualified heirs.

Under the majority's holding in this case, there will be no recapture even if the qualified heirs possessing successive interests die within the 15 years. If the majority in *Clinard* is holding that property qualifies for the special use valuation where the first taker alone is a qualified heir, astute estate planners can easily circumvent the statutory objectives: the property can be devised to an aged qualified heir for life and then to a nonqualified person. Under such circumstances, if the qualified heir dies within a few years, the property passes to the nonqualified person, and there will be no recapture even though the property passes to a nonqualified person within 15 years and even though the nonqualified person uses the property for some non-permitted purpose.

Were we drafting section 2032A, we might wish to craft an exception for cases where it is highly unlikely that the property will vest in a nonqualified remainderman. But, we are not Congress, and as the Supreme Court pointed out in *United States v. Correll*, 389 U.S. 299, 306-307 (1967), the courts:

do not sit as a committee of revision to perfect the administration of the tax laws. Congress has delegated to the Commissioner, not to the courts, the task of prescribing "all needful rules and regulations for the enforcement" of the Internal Revenue Code. 26 U.S.C. §7805(a). In this area of limitless factual variations "it is the province of Congress and the Commissioner, not the courts, to make the appropriate adjustments." *Commissioner v. Stidger*, 386 U.S. 287, 296 [1967] * * *. The role of the judiciary in cases of this sort begins and ends with assuring that the Commissioner's regulations fall within his authority to implement the congressional mandate in some reasonable manner.

See *Bingler v. Johnson*, 394 U.S. 741, 749-751 (1969). Thus, it is our responsibility to exercise appropriate judicial restraint and to limit our inquiry to ascertaining whether there is a reasonable basis for the regulations.

Here, we have a rare opportunity to view the regulations process: In his article, "Special Use Valuation Nine Years Later: A Farewell to Farms," 63 Taxes 659, 707-709 (1985), Martin D. Begleiter reviews several of the alternatives that were considered and presents the problems associated with those alternatives. For example, Mr. Begleiter points out that a rule could be written that would make a de minimis exception for interests where an actuarial valuation can be made. However, such an exception could not cover powers of appointment, such as those in *Clinard*, and there appears no practical way to limit them under the present statute. If an exception is to be made, clearly Congress must legislate and draw the lines circumscribing permitted gifts.

STERRETT, GOFFE, CHABOT, PARKER, and COHEN, *JJ.*, agree with this dissent.