ESTATE OF WALTER H. GEIGER, RONALD R. GEIGER AND NELLIE P. GEIGER, PERSONAL REPRESENTATIVES, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 7354–81.     Filed March 7, 1983.

*Robert H. Reinhart*, for the petitioners.
*Daniel J. Wiles*, for the respondent.

OPINION

COHEN, *Judge*: This case has been submitted fully stipulated pursuant to Rule 122, Tax Court Rules of Practice and Procedure. The stipulation of facts is incorporated herein by this reference. Walter H. Geiger (decedent) died a resident of Allegany County, Md., on May 7, 1977. Petitioners are the duly appointed and qualifying personal representatives of the estate of decedent and resided at LaVale, Md., at the time the petition herein was filed.

Petitioners filed an estate tax return for the estate of decedent with the Philadelphia Service Center on February 7, 1978. On that return, petitioners elected to specially value, under the provisions of section 2032A,[1] a piece of real property consisting of 646.5 acres of ground in Allegany County, Md. (the Geiger Farm). By notice of deficiency dated January 15, 1981, respondent determined a deficiency in estate taxes in the

---

[1]Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954 as amended and in effect at the date of death.

amount of $43,924.80. The said deficiency resulted from certain adjustments not now in dispute and disallowance of the special use valuation elected by petitioners with respect to the Geiger Farm. The fair market value of the Geiger Farm real property (without consideration of special use valuation) was $329,037.50 at decedent's death. The "special use value" of that real property was $59,520, and the executor elected to use that value for tax purposes and filed an agreement as required by section 2032A(d).

The Geiger Farm was purchased by decedent in 1951 and at the time of his death had been used by him and members of his family continually since 1951 for a farming operation, principally for the production of cows and calves. Personal property associated with the Geiger Farm at the time of decedent's death included livestock and farm equipment having a total combined value of $14,885. The Geiger Farm, including both real and personal property, passed from decedent to a qualified heir (as defined in sec. 2032A(e)).

From 1972 until the time of his death, decedent owned and operated as a sole proprietorship a wholesale hardware business in Cumberland, Md. The hardware business was on real property rented from an unrelated third party and included no real property owned by decedent. The personal property of the hardware business as of the date of decedent's death had a fair market value of $93,571.36. The hardware business was liquidated by the estate shortly after decedent's death, and the proceeds were used for general administrative purposes and in distributions to trusts created under the will of decedent.

The total value of the gross estate of decedent at the time of death was $810,518.27. The combined value of the Geiger Farm and the hardware business was $437,493.86, or 53 percent of the adjusted value of the gross estate. The value of the Geiger Farm, including real and personal property, was $343,922.50, or 42 percent of the adjusted value of the gross estate.

The sole issue for decision is whether petitioners are entitled to value the farm real property under the following provisions of section 2032A effective as of the date of decedent's death:[2]

---

[2]The decedent here died in 1977, and thus the statute examined would be the Tax Reform Act of 1976, Pub. L. 94–455, 90 Stat. 1520. However, in 1978 and 1981, Congress passed

SEC. 2032A(a). VALUE BASED ON USE UNDER WHICH PROPERTY QUALIFIES.—

(1) GENERAL RULE.—If—

(A) the decedent was (at the time of his death) a citizen or resident of the United States, and

(B) the executor elects the application of this section and files the agreement referred to in subsection (d)(2),

then, for purposes of this chapter, the value of qualified real property shall be its value for the use under which it qualifies, under subsection (b), as qualified real property.

\* \* \* \* \* \* \*

(b) QUALIFIED REAL PROPERTY.—

(1) IN GENERAL.—For purposes of this section, the term "qualified real property" means real property located in the United States which was acquired from or passed from the decedent to a qualified heir of the decedent and which, on the date of the decedent's death, was being used for a qualified use by the decedent or a member of the decedent's family, but only if—

(A) 50 percent or more of the adjusted value of the gross estate consists of the adjusted value of real or personal property which—

(i) on the date of the decedent's death, was being used for a qualified use by the decedent or a member of the decedent's family, and

(ii) was acquired from or passed from the decedent to a qualified heir of the decedent.

(B) 25 percent or more of the adjusted value of the gross estate consists of the adjusted value of real property which meets the requirements of subparagraphs (A)(ii) and (C),

(C) during the 8-year period ending on the date of the decedent's death there have been periods aggregating 5 years or more during which—

(i) such real property was owned by the decedent or a member of the decedent's family and used for a qualified use by the decedent or a member of the decedent's family, and

(ii) there was material participation by the decedent or a member of the decedent's family in the operation of the farm or other business, and

(D) such real property is designated in the agreement referred to in subsection (d)(2).

(2) QUALIFIED USE.—For purposes of this section, the term "qualified use" means the devotion of the property to any of the following:

technical corrections and qualifications in the Revenue Act of 1978, Pub. L. 95–600, 92 Stat. 2763, and the Economic Recovery Tax Act of 1981, Pub. L. 97–34, 95 Stat. 172. These changes were made retroactive in certain instances to estates of decedents dying after Dec. 31, 1976. Pub. L. 97–34, sec. 421(b)(1), 95 Stat. 306. Although the changes made in the 1978 and 1981 Acts are of limited relevance to the precise question involved here, the statute is hereinafter quoted and discussed with the retroactive amendments, unless otherwise noted.

(A) use as a farm for farming purposes, or

(B) use in a trade or business other than the trade or business of farming.

Petitioners contend that the values of the hardware business and of the Geiger Farm may be aggregated to determine whether the 50-percent test of section 2032A(b)(1)(A) has been met, and that Congress' failure to expressly deny such aggregation supports petitioners' interpretation of the statute. Respondent contends that only the Geiger Farm assets may be considered in determining whether the 50-percent test has been met and the value of personal property used in an unrelated business cannot be considered. In support, respondent argues that the "unitary use" theory of interpretation, which provides a single, integrated meaning of "real or personal property," is proper; such interpretation restricts the "personal property" that is within the qualified use provisions of the statute to personal property connected to the real property eligible for special use valuation. Respondent further argues that the hardware business personal property cannot be considered because it did not pass to a "qualified heir" as defined in section 2032A(e).

This is apparently a case of first impression. There appears to be no authority supporting petitioners' position, and the language and legislative history of section 2032A support respondent's determination, at least insofar as petitioners seek to include assets of a business consisting solely of personal property in the 50-percent test computation. It is not necessary to determine whether the hardware business personal property passed to a qualified heir of decedent, and we do not make any determination with respect to that issue. Nor do we decide whether the values of two separate farms and/or businesses could be aggregated if each involved qualified real property.

The pertinent provisions of section 2032A were adopted as a part of the Tax Reform Act of 1976, sec. 2003(a), Pub. L. 94–455, 90 Stat. 1856, in order to encourage the continued use of property for farming and other small business purposes by reducing the tax burden upon such property. H. Rept. 94–1380 (1976), 1976–3 C.B. (Vol. 3) 755, 756; S. Rept. 94–938 (Part 2) (1976), 1976–3 C.B. (Vol. 3) 657. The perceived unfortunate tax consequence resulted from valuing real property at its highest and best use rather than at its then-existing family use. This

result occurred because the real property was in effect valued separate and apart from the going business or farm. See D. Kelley & D. Ludtke, Estate Planning for Farmers and Ranchers, 642–643 (1980). The thrust of the 1976 statute is to allow taxes on estate property to be computed on an income capitalization method of valuation of "qualified" real property, rather than the traditional "fair market value" based on its highest and best use.

The tax relief provided by the statute, however, is limited in several ways. The decedent must have been a resident or citizen of the United States, and the subject real property must be located in the United States. The real property must have been used as a farm or in a trade or business by the decedent or a member of the decedent's family, with material participation in the operation of the farm or the business by the decedent or a member of the decedent's family. Real property qualifies for special use valuation only if it passes to "a qualified heir," who must be a member of the decedent's family. The ownership and use requirements must continue for 10 years after the decedent's death to avoid recapture of part of the tax savings resulting from special use valuation. Sec. 2032A(c). These requirements all express the intent of Congress to limit this particular form of tax relief to what would generally be regarded as a family farm or business. The effect of the special use valuation is to limit the taxed value of real property where it continues to be used for the favored family business purposes.

Where personal property is not a part of a business in danger of being "over valued" in the context of an existing use because real property connected with that business has been valued on the basis of another alternative possible use, the family business is not penalized and its continuance is not threatened. Thus, the hardware business in this case is valued in decedent's estate only on the basis of the personal property devoted to that business, and that value is not inflated by considering the possible use of certain of the business assets for other purposes. The hardware business in itself would not therefore qualify for special use valuation.

In addition to the requirements listed above with respect to the property, section 2032A includes requirements regarding the makeup of the taxable estate, as set forth in section

2032A(b)(1)(A) and (B). Those percentage requirements limit tax relief to those situations where the family farm or business is a major asset, in terms of value, in the decedent's estate. The implication of this requirement is that where a family business in which real property is a factor represents a substantial portion of the estate, lack of liquidity threatens continuation of the family farm or business.[3] See Hartley, "Final Regs. under 2032A: Who, what and how to qualify for special use valuation," 53 J. Tax'n 306–307 (1980).

Respondent argues that the context of the use of the words "personal property" in relation to "qualified real property" within section 2032A compels the conclusion that Congress contemplated a "unitary use" of property considered in applying the 50-percent test because "personal property" is used only in connection with "real property." Certainly respondent is correct that there is no "special use valuation" provided for personal property, whether or not connected to qualified real property. Respondent's careful analysis of the relationship between the terms in the statute is also persuasive.

In section 2032A, the term "personal property" is used only where it is connected to real property in the phrase "real or personal property." Other references to "real or personal property" in section 2032A are to "the property" in the singular, which necessarily implies that "real or personal property" is to be interpreted as a single unit, not as separate units "real property" and "personal property." These words are used as a single unit throughout section 2032A. Thus, when section 2032A(b)(1)(A) requires that the "real or personal property which (i) on the date of the decedent's death, was being used for a qualified use," it means a unitary use, not one use for the real property and a disconnected separate use for the personal property.

The unitary use interpretation is equally applicable to subsection (b)(2), which defines "qualified use" by reference to "devotion of *the* property" (the unitary concept) to use as a farm or other trade or business. The effect of the alternatively

---

[3]In this respect, sec. 2032A serves the same purpose as the contemporaneously adopted sec. 6166, providing for installment payment of estate taxes. Sec. 6166(c) expressly provides a special rule permitting aggregation of interests in two or more closely held businesses.

stated qualified uses is simply that the real property and the connected personal property may qualify either as a farm or as another trade or business. Nothing in this definition implies that the real property could be a farm and the personal property could be connected with a wholly separate trade or business not involving real property included in the decedent's estate.

Further, the phrase "real or personal property" must be read in the context of subsection (b)(1), which lists other threshold tests to define "qualified real property." Such real property is that which was being devoted to "a qualified use." The further subsections under (b)(1) set forth requirements for this qualification. Reading subsection (b)(1)(A) with (b)(1)(B), it becomes clear that Congress specified that the qualifying real property constitute at least 25 percent of the adjusted gross estate, but would allow the personal property necessarily connected with it to add to it to meet the 50-percent threshold. Of course, if the real property itself were greater than 50 percent, it would pass both tests.

The relationship of the assets to the qualifying business is also discussed in the Committee reports. The reports are clear that not all assets, or even all real property, will meet the qualifying use standard. For example, even real property physically connected to qualifying farmland is not necessarily qualified use property.

if there are buildings or other improvements on (or contiguous with) the farm and the buildings or other improvements are neither functionally related to the farm nor qualify as a farmhouse and related improvements, these buildings and other improvements are not treated as qualified farm real property. [H. Rept. 94–1380 (1976), 1976–3 C.B. (Vol. 3) 755, 758.]

If real property connected to but unrelated in use to the qualified real property to be specially valued does not qualify, personal property unconnected with the real property does not qualify.[4]

---

[4]In adopting modifying amendments subsequent to passage of the Tax Reform Act of 1976, Pub. L. 94–455, 90 Stat. 1520, Congress consistently referred to "real and personal" property as connected concepts.

"To qualify for the special use valuation rule, * * * the real property must have been owned by the decedent (or a member of his family) and used for farm or business purposes for five of the eight years preceding the decedent's death. Second, a substantial portion of the adjusted gross estate must consist of qualified property, i.e., 50 percent must consist of real and

We believe that the history, purpose, and structure of section 2032A all support the conclusion that Congress contemplated that the 50-percent requirement would be met by a family farm or business comprised of both real and personal property and not by adding the value of unconnected personal property to the value of the family farm or business in which the qualified real property is used.

*Decision will be entered for the respondent.*

---

personal property used *in the business* and 25 percent must consist of real property used *in the business.* Third, the *qualified property* (the portion satisfying the 50- and 25-percent tests) must pass to members of the decedent's family (known as "qualified heirs"). * * * [S. Rept. 95–745 (1978) (Technical Corrections Act of 1978) at 82; emphasis added.]"