ESTATE OF CARITA M. CLINARD, DECEASED, THOMAS H. MOFFETT, EXECUTOR, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6345-84.        Filed June 11, 1986.

*Arthur N. Laudeman*, for the petitioner.
*Michael W. Bitner*, for the respondent.

OPINION

GERBER, *Judge*: Respondent, by statutory notice dated December 13, 1983, determined a deficiency of $309,171.87 in Federal estate tax due from the Estate of Carita M. Clinard. The sole issue for our consideration[1] is whether farmland owned by decedent at the date of her death can be specially valued pursuant to section 2032A,[2] where a testamentary special power of appointment is given to a "qualified heir" over the remainder interest.

This case was submitted fully stipulated pursuant to Rule 122, Tax Court Rules of Practice and Procedure. The stipulation of facts and attached exhibits are incorporated herein by reference.

Carita M. Clinard (decedent), a citizen of the United States and domiciliary of the State of Illinois, died on March 28, 1980. She was survived by Thomas H. Moffett (son), Elizabeth C. Moffett (daughter-in-law), Anthony T. Moffett (grandson), Eloise M. Harper (daughter), H. Thomas Harper (son-in-law), Jeffrey T. Harper (grandson), Jill Harper Lenk Baker (granddaughter), and Jessica E. Baker (great-granddaughter). Thomas H. Moffett (petitioner) was duly appointed executor of decedent's estate and resided in McLean, Illinois, at the time the petition herein was filed.

At her death, decedent was the beneficial owner of 749.54 of 804 total units of an Illinois land trust, the corpus of which consisted of 804.73 acres of farmland located in Logan County, Illinois. Petitioner timely filed an estate tax return with the Internal Revenue Service Center, Kansas City, Missouri, on which he elected section 2032A special use valuation of the farmland herein involved. Respondent determined that decedent's estate was not entitled to specially value the farmland at $460,141.91 because of the possibility (remote as it may be) that all of the successive interests in the farmland would not pass to "qualified

---

[1]The parties have agreed that petitioner is entitled to a deduction for any additional attorney fees incurred in connection with decedent's estate, and petitioner has retained the right to reserve the election to deduct, on either the Federal estate tax return or the Federal income tax return, any interest paid by decedent's estate on Federal estate taxes.

[2]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect during the year in issue.

heirs.''[3] Thus, respondent contends that the farmland must be included in decedent's estate at the fair market value on the date of decedent's death.[4] Respondent agrees that decedent's interest in the farmland meets all of the other statutory and regulatory requirements.

Decedent's interest in the farmland passed pursuant to her Will and First Codicil, in equal shares to two trusts, Trust A and Trust B. Under the terms of Trust A the following interests were created: A life income interest to Thomas H. Moffett; upon his death, a life income interest to his wife, Elizabeth C. Moffett, should she survive him and be married to, or living with him at the time of his death; upon Elizabeth's death (if she qualifies), a life income interest to decedent's grandson, Anthony T. Moffett (Anthony). Upon Anthony's death, the trust will terminate and the property is to be distributed, as Anthony directs in his will, to any organization or person other than his estate, his creditors, or creditors of his estate. Should Anthony fail to exercise his power of appointment, the property will pass to (a) his then-living descendants, in equal shares per stirpes or, in default of such descendants, (b) in two equal parts: one-half to the then-living descendants of Glen L. Carl[5] in equal shares per stirpes (unqualified persons) and one-half to Trust B.

Under the terms of Trust B, decedent created the following interests: A life income interest to Eloise M. Harper, decedent's daughter; upon her death, a life income interest to her husband, H. Thomas Harper, should he survive Eloise and be married to and living with her at the time of her death; upon his death (if he qualifies), a life income interest in one-half of the trust corpus to each of decedent's grandchildren, Jill Harper Lenk Baker and Jeffrey T. Harper. Each one-half interest is to be held in separate trusts, Trust C and Trust D, which will terminate

---

[3] Sec. 2032A(e)(1) defines "qualified heir" as a member of decedent's family. Sec. 2032A(e)(2) defines "member of the family" as a decedent's ancestor or lineal descendant, a lineal descendant of decedent's grandparent, decedent's spouse, or the spouse of any such descendant.

[4] Respondent determined fair market value at the date of death to be $1,037,610.71, and not $960,141.91 as reported by petitioner. The parties now agree that the fair market value on the date of decedent's death was $998,876.31.

[5] Glen L. Carl is the father of Elizabeth C. Moffett. He died on Nov. 16, 1977, and at that time, in addition to his daughter Elizabeth and grandson Anthony, he was survived by Glen E. Carl (son) and Geraldine C. Brown (daughter). They all survived decedent.

upon the death of the beneficiary. Upon termination of the trusts, the property is to be distributed as the beneficiary's will directs, to any organization or person other than his estate, his creditors, or creditors of his estate. Should the beneficiaries fail to exercise the powers of appointment granted to them, the property will pass to their then-living descendants per stirpes. If neither Jeffrey nor Jill have surviving descendants, one-half of the property will pass to Ann Huff[6] or her descendants per stirpes (unqualified persons), and the other half to Trust A.

Decedent's will further provided that if, at the termination of any trust created pursuant to her will, none of the other trusts exist to which property so designated can be distributed and there is no remainder beneficiary of the terminating trust, any property which might otherwise be distributed pursuant to her will shall be distributed to the University of Illinois[7] (an unqualified person). The parties have agreed that the actuarial probabilities that Anthony, Jeffrey, or Jill will exercise their special powers of appointment in favor of either "qualified heirs" or unqualified persons are not susceptible of computation.[8]

Section 2032A is a rather detailed self-contained relief provision. It permits valuing, for estate tax purposes, real

---

[6]Ann Huff is the sister of H. Thomas Harper (decedent's son-in-law). It is not clear from the record whether she had any descendants at the date of decedent's death.

[7]Thomas H. Moffett graduated from the University of Illinois, and both decedent and her first husband, Thomas O. Moffett, attended the University of Illinois.

[8]The actuarial probabilities that the following would *not* survive decedent by 15 years are as follows:

|  | Date of birth | Sex |
| --- | --- | --- |
| Thomas H. Moffett | 10/14/24 | M |
| Elizabeth C. Moffett | 05/23/21 | F |
| Anthony T. Moffett | 06/15/55 | M |
| probability: | 0.1318% | |
| Eloise M. Harper | 01/09/23 | F |
| H. Thomas Harper | 07/21/16 | M |
| Jeffrey T. Harper | 02/29/52 | M |
| probability: | 0.2539% | |
| Eloise M. Harper | 01/09/23 | F |
| H. Thomas Harper | 07/21/16 | M |
| Jill H. Lenk Baker | 06/19/54 | F |
| probability: | 0.1808% | |
| Eloise M. Harper | 01/09/23 | F |
| H. Thomas Harper | 07/21/16 | M |
| Jill H. Lenk Baker | 06/19/54 | F |
| Jessica E. Baker | 07/30/79 | F |
| probability: | 0.0015% | |

property used for "farming purposes" on the basis of actual use rather than at the traditional fair market value.[9] This "special use valuation" usually results in an amount which is less than the traditional fair market value, thereby facilitating the reduction of estate tax to an amount more commensurate with the purposes for which the realty is being used.

Section 2032A statutory relief may be elected by an estate only if specific requirements are met.[10] The parties agree that all of the requirements have been met, except the requirement that the property "was acquired from or passed from the decedent to a qualified heir of the decedent." Sec. 2032A(b)(1). Section 2032A(e)(9)(C) is silent regarding the acquisition of real property by means of successive interests.[11]

Respondent argues that the special powers of appointment granted to decedent's three grandchildren enable them to pass the property to an unqualified person of their choice; consequently, all of decedent's interest did not pass to a qualified heir as required by section 20.2032A-8(a)(2), Estate Tax Regs. Respondent also contends that the remote possibility of a gift over to Ann Huff, her descendants, or the University of Illinois disqualifies section 2032A valua-

---

[9]Fair market value is defined as "the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts." Sec. 20.2031-1(b), Estate Tax Regs. Fair market value is determined on the highest and best use to which the property can be put, without much consideration for the actual use of the property.

[10]Sec. 2032A requires that: (1) The decedent was a citizen or a resident of the United States at the date of death; (2) the property to be specially valued is located in the United States; (3) such property represents 50 percent or more of the adjusted value of the gross estate; (4) the real property has been used for a qualified purpose at the decedent's death (defined as use as a farm for farming purposes or use in a trade or business other than for farming purposes); (5) the property has passed to a member of the decedent's family who qualifies under sec. 2032A; (6) 25 percent or more of the adjusted value of the gross estate consists of the property that was used for a qualified purpose by the decedent or his family for 5 of the 8 years preceding the decedent's death; and (7) there was material participation by the decedent or a member of his family in the operation of the farm or other business. Sec. 2032A(b); *Estate of Cowser v. Commissioner*, 736 F.2d 1168 (7th Cir. 1984), affg. 80 T.C. 783 (1983); *Estate of Coon v. Commissioner*, 81 T.C. 602, 607-608 (1983); *Estate of Geiger v. Commissioner*, 80 T.C. 484, 488 (1983).

[11]For purposes of this case, the statute merely permits acquisitions of property from trusts. Sec. 2032A(e)(9)(C) provides in pertinent part:

(9) PROPERTY ACQUIRED FROM DECEDENT.—Property shall be considered to have been acquired from or to have passed from the decedent if—

* * * * * * *

(C) such property is acquired by any person from a trust (to the extent such property is includible in the gross estate of the decedent).

tion. Petitioner, on the other hand, contends that decedent's interest has passed only to qualified heirs, therefore the remote possibility of any interest passing to an unqualified person should not be permitted to defeat decedent's dispositive scheme which, in all other respects, fits within the intent of Congress.

We agree with petitioner. Section 2032A does not directly address this point, and the farm herein clearly fits within the category of farms Congress intended to assist. Under these facts, to the extent that this result is prohibited by section 20.2032-8(a)(2), Estate Tax Regs., we find it to be invalid. The congressional purpose in enacting section 2032A was to aid the preservation of family farms, allowing them to pass from one generation to another. Should we adopt respondent's inflexible approach, the intended relief will not occur and decedent's heirs may be forced into the undesirable position of valuing the farm at its highest and best use, rather than its actual and existing family use. This is exactly what Congress sought to prevent by enacting section 2032A.

Congressional concern for the effect of estate tax upon family farms[12] prompted the enactment of section 2032A.[13]

---

[12]The report of the House Ways and Means Committee described the reasons for the change as follows:

"Your committee believes that, when land is actually used for farming purposes or in other closely held businesses (both before and after the decedent's death), it is inappropriate to value the land on the basis of its potential "highest and best use" especially since it is desirable to encourage the continued use of property for farming and other small business purposes. Valuation on the basis of highest and best use, rather than actual use, may result in the imposition of substantially higher estate taxes. In some cases, the greater estate tax burden makes continuation of farming, or the closely held business activities, not feasible because the income potential from these activities is insufficient to service extended tax payments or loans obtained to pay the tax. Thus, the heirs may be forced to sell the land for development purposes. Also, where the valuation of land reflects speculation to such a degree that the price of the land does not bear a reasonable relationship to its earning capacity, your committee believes it unreasonable to require that this "speculative value" be included in an estate with respect to land devoted to farming or closely held businesses." [H. Rept. 94-1380 (1976), 1976-3 C.B. (Vol. 3) 755-756. See also S. Rept. 94-938, Part 2 (1976), 1976-3 C.B. (Vol. 3) 657.]

[13]Sec. 2032A provides in pertinent part:

SEC. 2032A(a). VALUE BASED ON USE UNDER WHICH PROPERTY QUALIFIES.—
　(1) GENERAL RULE.—If—
　　　(A) the decedent was (at the time of his death) a citizen or resident of the United States, and
　　　(B) the executor elects the application of this section and files the agreement referred to in subsection (d)(2),
then, for purposes of this chapter, the value of qualified real property shall be its value for the use under which it qualifies, under subsection (b), as qualified real property.
　　　　*　　*　　*　　*　　*　　*　　*

Congress was aware that some estates would seek the tax relief afforded by the statute and then discontinue the family farm either by disposing of it or changing the use of the land. Such windfall was curtailed through the enactment of a recapture provision.[14] Congress initially chose a 15-year period[15] in which to require the operation of the family farm, during which time the farm could not be disposed of without adverse tax consequences.[16]

---

(b) QUALIFIED REAL PROPERTY.—

(1) IN GENERAL.—For purposes of this section, the term "qualified real property" means real property located in the United States which was acquired from or passed from the decedent to a qualified heir of the decedent and which, on the date of the decedent's death, was being used for a qualified use by the decedent or a member of the decedent's family, but only if—

(A) 50 percent or more of the adjusted value of the gross estate consists of the adjusted value of real or personal property which—

(i) on the date of the decedent's death, was being used for a qualified use by the decedent or a member of the decedent's family, and

(ii) was acquired from or passed from the decedent to a qualified heir of the decedent.

(B) 25 percent or more of the adjusted value of the gross estate consists of the adjusted value of real property which meets the requirements of subparagraphs (A)(ii) and (C),

(C) during the 8-year period ending on the date of the decedent's death there have been periods aggregating 5 years or more during which—

(i) such real property was owned by the decedent or a member of the decedent's family and used for a qualified use by the decedent or a member of the decedent's family, and

(ii) there was material participation by the decedent or a member of the decedent's family in the operation of the farm or other business, and

(D) such real property is designated in the agreement referred to in subsection (d)(2).

(2) QUALIFIED USE.—For purposes of this section, the term "qualified use" means the devotion of the property to any of the following:

(A) use as a farm for farming purposes, or

(B) use in a trade or business other than the trade or business of farming.

[14]See sec. 2032A(c)(1) and H. Rept. 94-1380 (1976), 1976-3 C.B. (Vol. 3) 756, in which Congress expressed its concern as follows:

"However, your committee recognizes that it would be a windfall to the beneficiaries of an estate to allow real property used for farming or closely held business purposes to be valued for estate tax purposes at its farm or business value *unless the beneficiaries continue to use the property for farm or business purposes, at least for a reasonable period of time after the decedent's death.* Also, your committee believes that it would be inequitable to discount speculative values if the heirs of the decedent realize these speculative values by selling the property within a short time after the decedent's death.

"For these reasons, your committee has * * * provided for recapture of the estate tax benefit where the land is prematurely sold or is converted to nonqualifying uses."

[Emphasis added.]

[15]Greater willingness to allow the family to dispose of the farm without adverse tax consequences after a reasonable time of its operation as such is found in sec. 2032A(c)(1), amended as of Feb. 15, 1984, which provides for a 10-year recapture period.

[16]If the specially valued property was disposed of or ceased to be used as a "qualified use" before the earlier of 15 years after the decedent's death or before the death of the qualified heir, additional tax was imposed against the estate, and payable by the qualified heir who signed the agreement required by sec. 2032A(a)(1)(B) and (d)(2).

The promulgators of the regulations, in an attempt to expand upon the meaning of the phrase "passed from decedent to a qualified heir," however, have restricted the relief to unconditional owners in fee simple absolute or its equivalence.[17] Estate Tax Regs. section 20.2032A-8(a)(2) states that where successive interests are in the heirs, remainder interests must not be contingent upon surviving a nonfamily member or vested subject to divestment in favor of a nonfamily member.[18] Respondent, through the ruling and briefs herein, interprets this regulation as disallowing special use valuation where a qualified heir possesses a life estate with a special power of appointment.

Respondent relies on Rev. Rul. 82-140, 1982-2 C.B. 208. Under the facts of the ruling, decedent bequeathed a life estate in his farm to his child, a qualified heir. The child was also given a testamentary special power of appointment over the remainder interest. Under the terms of the will, the property would pass to decedent's grandchild, should decedent's child fail to exercise the special power. Neither the probability of the child surviving the decedent by more than 15 years[19] nor the actuarial probability of the child exercising the power of appointment in favor of qualified heirs or unqualified persons is ascertainable from the facts stated in the ruling.

This ruling states that the successive interest requirement of section 20.2032A-8(a)(2), Estate Tax Regs., is not satisfied where an interest in qualified real property is subject to the qualified heir's testamentary special power of appointment. We refuse to apply such a restrictive interpretation in the instant case. Such an interpretation ignores the congres-

---

[17]Heirs who receive life estates with a general power of appointment over the property may, for example, take advantage of the special valuation provision.

[18]Sec. 20.2032A-8(a)(2), Estate Tax Regs., provides in pertinent part:

(2) *Elections to specially value less than all qualified real property included in an estate.* * * * If successive interests (e.g. life estates and remainder interests) are created by a decedent in otherwise qualified property, an election under section 2032A is available only with respect to that property (or portion thereof) in which qualified heirs of the decedent receive all of the successive interests, and such an election must include the interests of all of those heirs. * * * Where successive interests in specially valued property are created, remainder interests are treated as being received by qualified heirs only if such remainder interests are not contingent upon surviving a nonfamily member or are not subject to divestment in favor of a nonfamily member.

[19]In the instant case, the probabilities of the qualified heirs not surviving decedent by 15 years were small. See note 8 *supra*.

sional recognition that at some later date it may be more beneficial to dispose of the family farm.

Additionally, the recapture provisions already provide for the payment of additional tax should such disposition occur within the time prescribed by Congress. Under the terms of the required agreement,[20] a qualified heir remains personally liable for any additional estate tax imposed with respect to his interest should there be a disqualifying event.[21] Sec. 2032A(c)(5). A holder of a special power of appointment is considered to be a person having an interest in the specially valued property for purposes of entering into the agreement. Sec. 20.2032A-8(c)(2), Estate Tax Regs.

Under the terms of the trusts provided in decedent's will, a testamentary special power of appointment was granted to each of the grandchildren with respect to the remainder interest in the trust of which each grandchild was the beneficiary. Should there be a disqualifying event with respect to the farm herein involved, the grandchildren would be personally liable for any additional tax imposed with respect to both their life income interest and the remainder interests. It is inconsistent to have different classifications for the same interest. Since decedent's grandchildren are considered holders of an interest by virtue of their special powers of appointment for purposes of signing the agreement and incurring potential liability, they should be considered recipients of the interests that are subject to their special powers of appointment for purposes of section 20.2032A-8(a)(2), Estate Tax Regs., and qualified persons with the potential for "recapture" in accord with congressional mandate.

We now consider the validity of section 20.2032A-8(a)(2), Estate Tax Regs. Regulations are either legislative or interpretative, depending generally upon congressional mandate. *Estate of Pullin v. Commissioner*, 84 T.C. 789, 795-796 (1985). Where Congress expressly prescribes authority in a particular statute to expand, interpret, or define the terms of the statute, the resultant regulation is considered "legislative" and is treated more like the statute than regulations

---

[20]See note 16 *supra.*

[21]Additional estate tax is assessed if the executor elects sec. 2032A valuation and the qualified heirs later dispose of the farm or fail to use it for farming purposes within 15 years after the decedent's death.

promulgated under section 7805. *Estate of Pullin v. Commissioner, supra* at 796.

Regulations promulgated under section 7805 are considered "interpretative" (*United States v. Vogel Fertilizer Co.*, 455 U.S. 16 (1982); *Estate of Pullin v. Commissioner, supra* at 796), and are entitled to less weight than legislative regulations. *Estate of Boeshore v. Commissioner* 78 T.C. 523 (1982); *BBS Associates, Inc. v. Commissioner*, 74 T.C. 1118, 1132 (1980), affd. without published opinion 661 F.2d 913 (3d Cir. 1981). The regulation, sec. 20.2032A-8(a)(2), Estate Tax Regs.,[22] is "interpretative."

Treasury regulations "must be sustained unless unreasonable and plainly inconsistent with the revenue statutes." *Commissioner v. South Texas Lumber Co.*, 333 U.S. 496, 501 (1948). A regulation is not a reasonable statutory interpretation unless it harmonizes with the statute's "origin and purpose." *United States v. Vogel Fertilizer Co.*, *supra* at 26; *National Muffler Dealers Association, Inc. v. United States*, 440 U.S. 472, 477 (1979); *Estate of Pullin v. Commissioner, supra* at 797. To the extent that the regulation at hand could be read to prevent special use valuation, under these facts, where a qualified heir possesses a special power of appointment, we find it to be invalid.

In addition to the reasons already stated, we note that there is something fundamentally unfair about an interpretation of section 2032A that would permit a farm which is passed on to the decedent's children to be disposed of without any adverse tax consequences 16 years after the decedent's death, but at the same time would deprive a farm that remains in the decedent's family for two, or possibly three generations, of the statutory relief which was intended for exactly such a farm. Decedent's dispositive scheme has actually transferred the farmland to qualified heirs and requires it to remain in her family for at least two generations and possibly three. The farm is currently being operated by decedent's family as a family farm. We cannot ignore this.

Based on the foregoing, we hold that decedent's interest in the farm passed from the decedent to qualified heirs, as

---

[22]See note 18 *supra.*

required by section 2032A(b)(1)(A)(ii), and to the extent section 20.2032A-8(a)(2), Estate Tax Regs., would prevent that result, we find it to be invalid. Therefore, the estate is entitled to specially value the farmland pursuant to section 2032A.

Due to concessions by the parties,

*A decision will be entered under Rule 155.*

Reviewed by the Court.

NIMS, KORNER, HAMBLEN, CLAPP, SWIFT, JACOBS, WRIGHT, PARR, and WILLIAMS, *JJ.*, agree with the majority opinion.

———————

HAMBLEN, *J.*, concurring: As in *Estate of Davis v. Commissioner*, 86 T.C. 1156, filed on the same date as this opinion, the majority here adopts a commonsense approach in interpreting section 2032A. In my view, the majority correctly rejects respondent's argument that a special power of appointment under which the property could, but would not necessarily, pass to a nonqualified party precludes valuation under section 2032A. The Internal Revenue Service has taken the position that an interest which could be created by the exercise of a special power of appointment is a successive interest pursuant to section 20.2032A-8(a)(2), Estate Tax Regs. Rev. Rul. 82-140, 1982-2 C.B. 208. However, an interest created by the exercise of a general power of appointment is not so treated. Private Letter Ruling 8209004. The distinction made by the Internal Revenue Service when analyzing these two factual situations is that in the former the property is not included in the estate of the person holding the power whereas in the latter it is. While in other contexts there is a distinction between general and special powers of appointment, I can find no legislative authority for making this distinction within the context of section 2032A.

I respectfully concur.

———————

SIMPSON, *J.*, dissenting: For the reasons set forth in my opinion in *Estate of Davis v. Commissioner*, 86 T.C. 1156, filed on the same date as this opinion, I must also dissent in this case.

STERRETT, GOFFE, CHABOT, PARKER, and COHEN, *JJ.*, agree with this dissent.

---

WHITAKER, *J.*, dissenting: In this case a majority of this Court has invalidated section 20.2032A-8(a)(2) of respondent's Estate Tax Regulations so as to permit special use valuation to be elected where decedent's will empowers grandchildren to pass the property to unqualified heirs. In *Estate of Davis v. Commissioner*, 86 T.C. 1156 (1986) an analogous situation, we also invalidated this same section of the Estate Tax Regulations, but the facts were materially different. There we concluded that "the possiblity that the nonqualified class of contingent beneficiaries would succeed to the property is exceedingly remote. Where there is an obvious and continuing effort by a testator to comply with the requirements of section 2032A," it is appropriate to permit the special use valuation election to be made. The decedent in *Davis* restricted ownership of the property to his lineal descendants, one class of qualified heirs, as long as that line existed. There was a high degree of probability that the title to the farm would, in fact, vest in a lineal descendant. Here, by contrast, decedent permitted his grandchildren through exercise of special powers of appointment to divert the property to nonqualified heirs. This decedent did not make an "obvious and continuing effort" to comply with the section 2032A requirements. The fact that the family farm is likely to remain in the hands of qualified heirs for longer than the recapture period is simply irrelevant. Respondent's regulation as applied to a power of appointment is a reasonable interpretation of the statute and certainly not "plainly inconsistent." It should not be invalidated under the facts of this case. See *Bingler v. Johnson*, 394 U.S. 741 (1969).

SHIELDS, *J.*, agrees with this dissent.