ESTATE OF LILLIAN DeLISLE KILLION, Deceased, JAMES R. KILLION, Executor, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Killion v. Commissioner
Docket No. 38967-84.
United States Tax Court
T.C. Memo 1988-244; 1988 Tax Ct. Memo LEXIS 271; 55 T.C.M. (CCH) 1004; T.C.M. (RIA) 88244; May 31, 1988. *271 Decendent died in 1981, owning farmland. Petitioner, the estate, timely filed its United States Estate Tax Return, but did not include therein most of the information required under sec. 2032A(d)(1), I.R.C. 1954, and the corresponding regulations, concerning a Special Use Value election for the farmland. Nevertheless, almost 2 years after filing the return, petitioner filed a "First Amendment to Special Use Election" containing most of the missing information. Held, petitioner may not claim Special Use Values for the farmland. In valuing the estate, petitioner deducted the full amount of decedent's indebtedness to the Federal Land Bank, even though decedent owned stock in the bank that otherwise reduced that indebtedness, at retirement, but the full face value of the stock. Held, petitioner must include the full face value of the stock in the decedent's gross estate. Harold D. Jones, for the petitioner. Nancy W. Hale, for the respondent. STERRETT
MEMORANDUM OPINION STERRETT, Chief Judge:* By notice of deficiency dated October 9, 1984, respondent determined a deficiency of $ 567,073.00 in petitioner's Federal estate tax. After concessions, the issues for decision are: 1) whether *272 petitioner may claim Special Use Values pursuant to section 2032A[1] with respect to four tracts of farmland; and 2) whether petitioner must include in the decedent's gross estate certain stock of the Federal Land Bank Association. The parties submitted this case on fully stipulated facts pursuant to Rule 122. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Petitioner is the estate of decedent, Lillian DeLisle Killion, who died testate on January 21, 1981. The executor of decedent's estate, James R. Killion, resided in Portageville, Missouri, at the time the petition was filed. On October 21, 1981, petitioner filed a Form 706, United States Estate Tax Return, with the Office of the Internal Revenue Service in Kansas city, Missouri. On that return, petitioner valued four tracts of farmland owned by decedent at her *273 death at a "Special Use Value," as defined under section 2032A, of $ 748,305. The four tracts otherwise had an aggregate fair market value of $ 1,439,306. When filing the estate tax return, petitioner checked the appropriate box on the return to indicate petitioner's intent to value the four tracts at their Special Use Values. However, petitioner provided almost none of the information specified in the instructions on the return [2] *274 *275 and listed only the names of James R. Killion and Mary Ann Wilson, decedent's son and daughter, as the persons having an interest in the estate when, in reality, decedent's granchildren, under testamentary trust provisions in decedent's will, had interests in the farmland. [3] *276 *277 On September 9, 1983, almost 2 years after filing the original estate tax return, petitioner filed a "First Amendment to Special Use Election" that included most of the information specified under the rules and regulations for section 2032A elections. [4] *278 Subsequently, on or about October 30, 1986, petitioner provided respondent with appraisals of the fair market value of the decedent's farmland. Additionally, although decedent owed $ 374,789 at her death to the Federal Land Bank of Caruthersville, she owned stock in the bank that otherwise would reduce her indebtedness, at retirement, by the face value ($ 18,050) of the stock. On decedent's estate tax return, however, the executor reduced the value of decedent's estate by the full amount of her indebtedness without taking into account the offsetting face value of the stock. [5]
In his notice of deficiency, respondent determined that petitioner could not claim Special Use Values pursuant to section 2032A because petitioner failed to include with its estate tax return either the necessary *279 information or a "Personal Liability Agreement" signed by al potential devisees of the farmland, pursuant to the rules and regulations for section 2032A elections. Respondent also determined that petitioner, in valuing decedent's gross estate, failed to take into account the face value of the Federal Land Bank stock and, accordingly, undervalued the estate by $ 18,050) of the stock. On decedent's estate tax return, however, the executor reduced the value of decedent's estate by the full amount of her indebtedness without taking into account the offsetting face value of the stock. Petitioner has challenged these determinations in its petition and hence the issues are framed. Section 2032A. We have noted that respondent contends that petitioner may not claim Special Use Values under section 2032A because it failed to file a notice of election in substantial complaince with the rules and regulations for section 2032A elections or in accordance with the instructions on petitioner's estate tax return. Petitioner, on the other hand, argues that it manifested sufficient intent on the return to elect Special Use Values and that, considering certain local customs and other equitable considerations, *280 it properly claimed, or must be allowed to claim, Special Use Values for the farmland. [6] For the reasons discussed below, however, we hold for respondent on this issue. In general, under section 2032A, estates may value certain qualifying farms and other real property used in a trade or business according to the property's actual use at the time of a decedent's death, rather than according to the property's fair market value based upon its highest and best use. See sec. 2032A(e)(7); see generally Estate of Geiger v. Commissioner,80 T.C. 484, 487-488 (1983). In the present case, respondent argues that, although petitioner otherwise was eligible to elect Special Use Values, [7] it did not file a valid notice of election and therefore cannot claim Special Use Values. In this regard, section 2032A(d)(1) specifies that a valid Special Use Value election "shall be made on the return * * *281 * in such manner as the Secretary shall by regulations prescribe." Correspondingly, the regulations specify the informational reporting requirements for making the election by requiring taxpayers to attach a notice of election that includes various items of information [3] to their otherwise timely filed estate tax returns. Sec. 2023A(d)(1); sec. 20.2032A-8(a)(3), Estate Tax Regs. In order to claim Special Use Values, the estate must meet the specific requirements of section 2023A. Estate of Clinard v. Commissioner,86 T.C. 1180, 1184 (1986); see also Estate of Cowser v. Commissioner,736 F.2d 1168 (7th Cir. 1984), affg. 80 T.C. 783 (1983); Estate of Abell v. Commissioner, 83 T.C, 696 *282 (1984). [9] Petitioner apparently does not challenge that one such requirement concerns the informational reporting requirements of section 2032A(d) and the corresponding regulations. In the present case, petitioner provided almost none of the requisite information on its original return and did not, therefore, make a valid section 2032A election. McDonald v. Commissioner,89 T.C. 293, 304-305 (1987); see also Estate of Geiger v. Commissioner, supra at 488; cf. Estate of Abell v. Commissioner, supra at 699. Petitioner, however, points to its filing on September 9, 1983, of a "First Amendment to Special Use Election." Indeed, that document, as respondent concedes on brief, contains substantially all the information that petitioner omitted from its original return. However, we previously have addressed analogous situations where taxpayers submitted the necessary information in an untimely manner, and we have found their submissions insufficient *283 to cure the original defects in their returns. Estate of Gunland v. Commissioner,88 T.C. 1453 (1987); see McDonald v. Commissioner, supra.Similarly, we find that petitioner, by filing a "First Amendment to Special Use Election" almost 2 years after filing its original tax return, did not sufficiently cure the defects in its original filing. Petitioner also argues that Congress, by amending section 2032A in Tax Reform Act of 1986 (the "1986 Act"), allowed estates to cure certain defects in their elections in certain cases of decedents dying before January 1, 1986. See the 1986 Act, Pub. L. 99-514, sec. 1421(a), 100 Stat. 2717. Apparently, petitioner argues thereby that under section 2032A(d)(3) and the 1986 Act amendments, it is entitled to 90 days additional time in which to cure any defects in its election. [10] *285 However, the legislative history to the 1986 Act indicates that Congress acted specifically to compensate for incomplete instructions in one particular edition of Form 706. H. Rept. 99-841, (Conf.) at 770-771 (1986) (to accompany H.R. 3838), 1986-3 C.B. (Vol.4) 770-771. In the present case, petitioner does not contend, and the record contains no evidence, that petitioner *284 used the particular edition of Form 706 targeted by the 1986 Act. In addition, section 1421 of the 1986 Act provides relief only in situations involving taxpayers who provided substantially all the required information with their original returns. See the 1986 Act, supra; McDonald v. Commissioner, supra at 306-308. In this regard, Congress added section 2032A(d)(3) in the Deficit Reduction Act of 1984 (the "1984 Act") to permit taxpayers to perfect, effectuate or correct their section 2032A elections "only in cases where the estate tax return, as filed, evidences substantial compliance with the requirements of the Treasury regulations." H. Rept. 98-861 (1984), 1984-3 C.B. (Vol. 2) 495. In the present case,k and as discussed above, petitioner included almost none of the requisite information with its original return and, therefore, did not substantially comply with the requirements of section 2032A(d)(1) and its regulations. Thus, the 1986 Act amendments do not provide relief in the present case and, similarly, petitioner is not entitled to additional time under section 2032A(d)(3) within which to perfect its purported section 2032A election. Petitioner also argues that by checking the appropriate questionnaire box on its estate tax return, it manifested sufficient intent to claim Special Use Values for the farmland. Having manifested that intent, petitioner, citing Prussner v. United States, an unpublished order ( C.D. Ill. 1987, 87-2 USTC par. 13,739), and the aforementioned addition of section 2032A(d)(3) by the 1984 Act, apparently argues that it may cure an *286 otherwise defective election by filing a document such as its "First Amendment to Special Use Election." However, both the order in Prussner v. United States, supra, and the 1984 Act amendments address situations in which taxpayers have complied substantially with the informational reporting requirements of section 2032A(d)(1) and the regulations thereunder and may, therefore, cure the otherwise minor defects in their original filings. See sec. 2032A(d)(3)(B); Prussner v. United States, supra. The facts herein are otherwise. Petitioner presents other arguments on brief to the effect that "The practical procedure of the Special Use Valuation depends to a large extent on the indivudal personality and attitude of the examiner and his reviewer," and reasons thereby that it should be allowed 90 additional days to comply with the information reporting requirements. However, we find no evidence in the record to support petitioner's contentions with respect to the alleged actions of the examining agents, [11] *287 or to support petitioner's related arguments concerning the alleged local practices and practical procedures*of Special Use Value elections in petitioner's particular jurisdiction. Accordingly, we hold that petitioner may not claim Special Use Values with respect to decedent's farmland. [12]
Federal Land Bank Stock. Respondent argues that petitioner must include the full face value ($ 18,050) of the Federal Land Bank Association stock in decedent's gross estate because the stock operates, dollar for dollar, to reduce that indebtedness *288 at retirement and that, by contrast, petitioner deducted the full amount of the indebtedness from decedent's gross estate without taking the stock into consideration. [13]
Petitioner, on the other hand, asserts that because the bank reduced the initial loan proceeds to decedent by the face value of the stock, the stock merely increased the effective interest rate to decedent and not the value of her gross estate. In addition, petitioner, despite citing no authority for its proposition, contends that the face value of the stock, if includable in decedent's gross estate, somehow should be discounted. Petitioner's assertions apparently address respondent's argument that because decedent secured her loan with the stock, that the full face value of the stock is includable in her gross estate. [14] Notwithstanding these arguments, we hold for respondent on this issue for the following reasons.
Petitioner must include the value *289 of all property, real or personal, tangible or intangible and owned by decedent on the date of her death, in her gross estate. Sec. 2031 and 2033. Although decedent, as respondent concedes on brief, could not sell or transfer her stock independently of her indebtedness to the bank, we agree with respondent that relative to her outstanding indebtedness, her stock had a value of $ 18,050. Conversely, however, petitioner contends on brief that "It is self-evident that 'property' which cannot be sold and produces no income does not have a market value," and that, at a minimum, the face value of the stock must somehow be discounted. Indeed, respondent concedes that decedent could not sell her stock and that it produced no income. However, petitioner presents no evidence and cites no authority relating to the amount or the extent tot which it may discount the stock. Quite simply, petitioner has failed to establish a value for the stock differing from the full face value that reduced, dollar for dollar, decedent's corresponding liability to the bank. Accordingly, we find that the stock had a value of $ 18,050 to the estate and hold, therefore, that the stock properly is includable in *290 decedent's gross estate at the full face value. To reflect the concessions [15] and the foregoing, Decision will be entered under Rule 155.
Footnotes
*. By appropriate order, this case was reassigned to the Chief Judge for opinion and decision. ↩
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended in effect at the time of decedent's death, and all rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. The return contained the following instructions for taxpayers electing Special Use Valuation: [A]ttach to this return a statement that includes the following information: (i) The relevant qualified use; (ii) The items of real property shown on the estate tax return to be specially valued pursuant to the election (identified by schedule and item number); (iii) The fair market value of the real property to be specially valued under section 2032A and its value based on its qualified use (both values determined without regard to the adjustments provided by section 2032A(b)(3)(B)); (iv) The adjusted value (as defined in section 2032A(b)(3)(B)) of all real property which is used in a qualified use and which passes from the decedent to a qualified heir; (v) The items of personal property shown on the estate tax return that pass from the decedent to a qualified heir and are used in a qualified use under section 2032A (identified by schedule and item number) and the total value of such personal property adjusted as provided under section 2032(A)(b)(3)(B) (sic); (vi) The adjusted value of the gross estate, as defined in section 2032A(b)(3)(A); (vii) The method used in determining the special value based on use; (viii) Copies of written appraisals; (ix) The date on which the decedent (or a member of his or her family who held the property before the decedent) acquired the property and on which he or she or a member of his or her family commenced the qualified use (is different from the date of acquisition); (x) Any periods following commencement of the qualifed use during which the decedent or a member of his or her family did not own the property, use it in a qualified use, or materially participate in the operation of the farm or other business within the meaning of section 2032A(e)(6); and (xi) The name, address, taxpayer identification number, and relationship to the decedent of each person taking an interest in each item of specially valued property, and the value of the property interests passing to each such person based on both fair market value and qualified use. Also attach to this return an agreement to express consent to personal liability under section 2032A(c) property or early cessation of the qualified use. The agreement must be executed by all parties receiving any interest in the property being valued based on its qualified use. The agreement is to be in a form that is binding on all parties under applicable local law. It must designate an agent for the parties for all dealings with the Internal Revenue Service on matters arising under section 2032A. * * * Despite these instructions, petitioner included with its return only the legal descriptions of the four tracts of farmland, each tract's corresponding Special Use Value, and a purported consent to personal liability for recapture tax, more fully described in note 3, infra.↩
3. The return contained an instruction that taxpayers include "the name, identifying number, relationship, and address of all parties receiving any interest in the specially valued property." Additionally, in an apparent attempt to comply with the instructions on the return relative to recapture tax agreements under section 2032A(a)(1)(B) and (d)(2), petitioner attached a "Personal Liability Agreement," purportedly relating to recapture tax under section 2032A(d)(1), as follows: PERSONAL LIABILITY AGREEMENT The undersigned parties, being all parties having an interest in that property described as Item 1 thru 4 on Schedule A of decedent's Form 706, do hereby consent to personal liability of an additional Federal Estate Tax which may become due pursuant to Section 2032A(c) of the Internal Revenue Code of 1954, as amended, in the event of early disposition or early cessation of the qualified use of the property within fifteen (15) years of the date of the decedent's death. The undersigned parties hereby appoint Harold D. Jones, or Howard Tillman, C.P.A., as agent for all parties and all dealings with the Internal Revenue Service of matters arising under Section 2032A. Although James R. Killion signed the agreement (as executor but not in his individual capacity), none of decedent's children or grandchildren signed the agreement. 4. Specifically, petitioner included information regarding the relevant qualified use, the items of real property shown on the return that petitioner intended to specially value, the estate's claimed fair market value of the real property, the adjusted value of the gross estate, the method that petitioner used in determining the Special Use Values, the date on which the qualified use commenced, a statement that no period existed when ownership, material participation or qualified use ceased, and a listing of the decedent's children and grandchildren and their addresses and phone numbers. However, petitioner, neither with its "Personal Liability Agreement" nor it's "First Amendment↩ to Special Use Election," filed an agreement to personal liability signed by the trustee or by any of the persons who were potential beneficiaries in accordance with the testamentary trust provisions in decedent's will. 5. Thus, the executor reduced the value of the estate by the full amount of the indebtedness ($ 374,789) instead of reducing the indebtedness by the face value of the stock (by $ 18,050 to $ 356,739) or, alternatively, including the face value ($ 18,050) as an offsetting asset in decedent's gross estate. ↩
6. For example, petitioner, on brief, "prays the Court that it find that he [sic] has sufficiently demonstrated his [sic] intent to elect the substantial right of Special Use Valuation and that if Respondent requires additional information, Petitioner shall have 90 days after such Notice to supply same." ↩
7. See, e.g., Estate of Clinard v. Commissioner,86 T.C. 1180 (1986), discussing certain eligibility requirements for section 2032A↩ elections. 3. Section 20.2032A-8(a)(3), Estate Tax Regs., provides that "An election under this section is made by attaching to a timely filed estate tax return * * * a notice of election which contains the following information: * * *," and lists items of information substantially similar in form and content to the items requested in the instructions on Form 706, set forth in note 2, supra.↩
9. See also Estate of Willams v. Commissioner,T.C. Memo. 1984-178, and Estate of Boyd v. Commissioner,T.C.Memo. 1983-316, to the effect that reasonable cause does not excuse noncompliance with the section 2032A↩ informational reporting requirements. 10. In this regard, sectin 2032A(d)(3), added by the Deficit Reduction Act of 1984 and applicable to estates of decedents dying after December 31, 1976, and as in effect after the 1986 Act, provides, in pertinent part: (3) Modification of Election and Agreement to Be Permitted. -- The Secretary shall prescribe procedures which provide that in any case in which -- (A) the executor makes an election * * * within the time prescribed for filing such election, and (B) substantially complies with the regulations prescribed by the Secretary with respect to such election, but -- (i) the notice of election, as filed, does not contain all required information * * * the executor will have a reasonable period of time (not exceeding 90 days) after notification of such failures to provide such information or agreements. ↩
11. In this regard, we agree with respondent that the record contains no evidence to justify going behind respondent's notice of deficiency in the present case. See Greenberg's Express, Inc. v. Commissioner,62 T.C. 324↩ (1974). 12. In the present case, respondent also argues that petitioner may not elect Special Use Values because it failed to submit a valid agreement of consent, signed by each person having an interest in the property, to personal liability for recapture tax under section 2032A(c). Considering our decisions in Estate of Gunland v. Commissioner,88 T.C. 1453 (1987), and Estate of McDonald v. Commissioner,89 T.C. 293↩ (1987), respondent's argument has much merit. However, we need not reach that argument, having already determined that the estate may not claim Special Use Values for the reasons discussed above in the test. 13. See note 5, supra.↩
14. See, e.g., sec. 20.2031-2(g), Estate Tax Regs., and Sam Broadhead Trust v. Commissioner,T.C. Memo. 1972-196↩, to the effect that taxpayers must include the full amount of securities pledged to secure an indebtedness in a decedent's gross estate. 15. Petitioner, on brief, states that its argument that decedent abandoned her rights to receive certain rents from her children "cannot be supported by competent evidence." We interpret this statement as a concession by petitioner that certain rents, specified in respondent's notice of deficiency as payable to decedent at her death, are includable in her gross estate. ↩