**ESTATE OF William A. FRIEDERS, Deceased, Elmer Frieders, Executor, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE SERVICE, Respondent.**

No. 81–2742.

United States Court of Appeals, Seventh Circuit.

Argued June 3, 1982.

Decided Aug. 30, 1982.

Rehearing Denied Sept. 23, 1982.

Chester A. Lizak, Chicago, Ill., for petitioner.

Thomas A. Gick, Tax Div., Dept. of Justice, Washington, D. C., for respondent.

Before PELL, Circuit Judge, GIBSON,* Senior Circuit Judge, and ESCHBACH, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

This is an appeal of a decision of the Tax Court as to the valuation of real estate for estate tax purposes. I.R.C. §§ 2001–2209 (1970). The estate raises two issues on appeal. The first is that the finding as to the value of the property was clearly erroneous because nearby properties which the Tax Court considered in determining the value were not comparable, and other evidence considered by the court was incompetent. The estate's other argument is that the Tax Court abused its discretion in refusing to consider evidence the estate presented to the court after that court had issued its decision.

## I. Facts

William Frieders died on May 14, 1973, leaving an estate which included a ninety-two acre family farm. His estate valued the farm at $2,000 per acre. The Commissioner assessed a value of over $5,000 per acre. The estate brought this action in Tax Court, seeking a redetermination. At the trial, the Commissioner took the position that the estate was worth $5,000 per acre.

The following facts were adduced at trial. The Frieders farm is located in DuPage County, Illinois, about thirty miles west of Chicago. The farm is between the city of Aurora, located two and a half miles to the southwest, and the city of Naperville, six miles to the east. There was one road leading to the Frieders farm. The farm has gas, electricity, and telephone service, but did not have sewer and water service. There was discussion of construction of a freeway to be located very near the Frieders farm, but the plans have been virtually abandoned. A shopping center was proposed for a location two miles from the Frieders farm. That shopping center was completed and has over 100 stores. There was investment activity in the area at the time of Frieders' death, including activity by the Crown family of Chicago. The Crowns, acting through trusts, bought properties near the Frieders farm and made offers on others. Shortly after Frieders' death, the Crowns were willing to buy the Frieders farm and two properties owned by other persons for an average of $6,000 per acre as part of an assemblage. The other

* Hon. Floyd R. Gibson, Senior Circuit Judge, Eighth Circuit, sitting by designation.

property owners wanted more than $6,000 and the sale was not consummated.

The Government presented one expert witness, Donald Neuses, who relied primarily on the selling prices of six properties near the Frieders farm. Five of the six properties were bought by the Crowns as part of an assemblage, and the price per acre of the five properties ranged from $5,693 to $7,653. The other property sold for $5,090 per acre. Neuses testified that the Frieders farm was in the middle of a development corridor.

The estate presented three witnesses. The essence of the testimony of two of them was that the activity by the Crowns inflated the prices and made the properties relied on by Neuses not comparable. Another witness testified that the value of farmland throughout Illinois increased by 341 percent between 1973 and 1979.

The Government also attempted to show value by introducing assessment records which placed on the Frieders farm a fair market value for real estate tax purposes of $4,986 per acre for 1972.

The Tax Court found that the fair market value of the Frieders farm was $5,000 per acre. The court relied principally on the testimony and report of the Government's witness, Donald Neuses. The court agreed with Neuses that the highest and best use of the Frieders farm was a speculative, that is, an investment use.

The court filed its Memorandum Findings of Fact and Opinion on May 27, 1980. On December 20, 1980, the Frieders farm was sold for $5,000 per acre. The Tax Court decision was not entered until July 23, 1981, because of the time it took to compute the deficiency pursuant to Tax Ct.R. 155. On October 13, 1981, almost three months after the Tax Court decision was rendered, the estate submitted a motion to vacate or revise the decision based on the evidence of the actual sale price of the Frieders farm. Under Tax Ct.R. 162, such a motion must be filed within thirty days after the decision has been entered, unless the court shall otherwise permit. The court denied leave to file the motion.

## II. Analysis

### A. The Finding as to Value

■ The estate argues that the Tax Court's finding as to the value of the Frieders farm was in error. The Tax Court's determination as to fair market value is a question of fact which we will uphold unless clearly erroneous. *Tripp v. Commissioner*, 337 F.2d 432, 434 (7th Cir. 1964). The fair market value is the oft repeated concept of "the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts." Treas.Reg. § 20.2031–1(b). *See also United States v. 429.59 Acres of Land*, 612 F.2d 459, 462 (9th Cir. 1980); *United States v. 344.85 Acres of Land*, 384 F.2d 789, 791 (7th Cir. 1967).

The estate's argument appears to be that the sales of the properties near the Frieders farm were not comparable because they involved "unwilling sellers," that is, sellers who only sold their property at a premium and who could hold out for that high price because of the investor's desire and need to buy properties as part of an assemblage. The estate is implicitly arguing that a seller is "unwilling" if he is interested in selling only because of a high offer. And it is common knowledge that an assembler of large tracts of land will often have to offer premium prices to potential sellers who are indifferent about selling or not interested in selling at current market prices.

The estate's other objection to the Tax Court's valuation is that the court erred in considering evidence which was incompetent. The estate relies on *Mercer County v. Wolff*, 237 Ill. 74, 86 N.E. 708, 711 (1908), which held that records of the assessed value of a piece of property were incompetent and immaterial to show the value of the property.

■ Although we are concerned with the effect of this decision in light of the substantial inflation occurring the past decade, after reviewing all the evidence presented

at the trial we cannot call the Tax Court's decision clearly erroneous. First, the Tax Court found that the highest and best use of the Frieders farm was a speculative, that is, an investment use. There was substantial evidence to support this conclusion. There were plans for a large shopping center two miles from the Frieders farm. There were plans to construct a freeway very near the Frieders farm. (The project, according to the estate, can now be considered abandoned.) Even without the Crowns, there would have been some investment activity in the area.

■ Second, the fact that there was investment activity does not in itself make the nearby sales not comparable. The lack of investment activity is not a prerequisite to having "willing sellers." The only guidance the applicable regulation gives in defining an unwilling seller is this statement: "The fair market value . . . is not to be determined by a forced sale price." Treas.Reg. § 20.2031–2(b). The sales near the Frieders farm certainly did not involve "unwilling sellers" in the sense that there was a forced sale. Likewise, one cannot say that the people involved in the sales near the Frieders farm were literally "under any compulsion to buy or to sell." *Id.* There may be a question as to whether an "unwilling seller" exists only in a forced sale situation. *See 429.59 Acres of Land,* 612 F.2d at 462 (a willing seller is one who "desires" to sell), but we would not call a property owner an "unwilling seller" simply because his property has development potential due to its proximity to a proposed freeway.

■ Third, the fact that the Crowns were buying property as part of an assemblage, which could be a situation that might involve an "unwilling seller," does not change our conclusion. We can assume that the estate is correct in suggesting that the purchase of property in an assemblage makes for a higher price than if a property is sought independent of other properties. In this case, the five properties which the Tax Court used as comparables and which were part of the Crown assemblage sold for much more than $5,000 per acre. These properties sold for from $5,693 to $7,653 per acre. Also, the Frieders farm apparently could have been sold in 1973 for $6,000 per acre as part of an assemblage if the other owners were not holding out for a higher price. The Tax Court, in adopting the lower figure of $5,000 per acre, appears to have assumed that assemblage purchases bring higher prices.

Fourth, there was one comparable which was not part of an assemblage. It sold for $5,090 per acre. The estate argues that this property had greater development potential than the Frieders farm because of its size, road frontage, and the possibility of getting sewer and water service. The estate suggested at trial that the Frieders farm could not get sewer service. However, we cannot say as a matter of law its development potential—and hence its value—was substantially greater than that of the Frieders farm.

■ Fifth, the Tax Court did not err in considering the assessment records. *Mercer County* held that an assessor's book, offered to prove the assessment value of property, was incompetent. The court said the assessed value of the property was immaterial to the issue, although the assessor could have testified as to his judgment of the value of the property. 86 N.E. at 711. However, under Illinois law at the time of Frieders' death, assessment records could be material. An Illinois statute required that property be assessed at its "fair cash value," Ill.Rev.Stat. ch. 120 § 501(1) (1971), and defined "fair cash value" as fifty percent of the actual value. *Id. at* § 482(24). In light of this statutory requirement, the assessed value would be material. The records showed the assessed value of the Frieders farm to be $229,331, twice which is $458,662, or $4,986 per acre.

When we look at all the evidence presented to the Tax Court, we conclude that its decision was not clearly erroneous.

## B. Post-trial Evidence

The estate's other argument is that the Tax Court erred in refusing to consider

evidence of value of the Frieders property which came into being after the trial. The trial was held on December 11, 1979, and the Tax Court issued its findings on May 27, 1980. The Frieders farm was sold for $5,000 per acre on December 20, 1980, seven months after the Tax Court issued its findings and seven months before the final decision was issued. The property was sold after it received sewer service and plans were announced to increase the road frontage. The estate brought the sale to the attention of the Tax Court by way of a motion on October 13, 1981, almost three months after the Tax Court's July 23, 1981, decision. Because this motion was received by the Tax Court more than thirty days after its decision, the motion could be considered only by leave of the court. Tax Ct.R. 162. We must decide whether the Tax Court abused its discretion in denying the estate leave to file its motion.

 This issue is important because, if the property was worth $5,000 per acre in 1980, one would consider it unlikely that the property was worth $5,000 per acre in 1973, in view of the substantial, continuing inflationary status of the economy between 1973 and 1980. Nevertheless, we cannot say that the court abused its discretion. The estate had eight months after the sale to file its motion without the need to gain the permission of the court. There was no excuse given for the delay. The court's interest in terminating litigation allowed it to refuse to consider evidence known to the estate well before the court's decision. See *Koufman v. Commissioner*, 69 T.C. 473, 476 (1977).

Furthermore, it is not clear that the additional evidence would have changed the result. It is possible that the value of the Frieders farm did not follow general inflationary trends. At the time of Frieders' death, there was a proposal for a new freeway near the Frieders farm. One would expect that anticipation of the freeway construction would inflate the price of the Frieders farm. The later abandonment of the project would have a deflationary effect. Perhaps it is only because of inflation

that the property has reascended to a value of $5,000 per acre. This possibility is supported by the fact that the Frieders farm could have been sold for $6,000 per acre, although admittedly only as part of an assemblage. Also, the provision of sewer service would undercut the estate's suggestion at trial that the Frieders farm had a low value because it was almost impossible to get this service.

The Tax Court's valuation of the Frieders property was not clearly erroneous, and the court did not abuse its discretion in refusing to consider the post-trial evidence. The judgment of the Tax Court is affirmed.