ESTATE OF JAMES U. THOMPSON, DECEASED, SUSAN T. TAYLOR, PERSONAL REPRESENTATIVE, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 9879-86.        Filed September 17, 1987.

*Michael E. Marr,* for the petitioner.
*Mary C. Gorman,* for the respondent.

WILLIAMS, *Judge*: The Commissioner determined a deficiency in petitioner's Federal estate tax in the amount of $509,957. After concessions by the parties, the issues this Court must decide are (1) whether petitioner may elect special use valuation for segments of two farms pursuant to section 2032A,[1] and (2) the fair market value of four farm properties in the decedent's estate.

FINDINGS OF FACT

Some of the facts of this case have been stipulated and are so found. James U. Thompson, the decedent, died on May 8, 1982. Susan T. Taylor, the personal representative of the estate of James U. Thompson, resided at Allen, Maryland, at the time the petition in this case was filed.

At the time of his death the decedent owned, among other properties, four farms located in Dorchester County, Maryland (the farm properties): the Middletown Branch Farm, the Big Mill Farm, the Vincent or Linkwood Farm, and a farm of 68.75 acres (the 68.75-Acre Farm). The Middletown Branch Farm has 529.6 tillable acres and 9.56 woodland acres on its south side, and 159.3 tillable acres and 305.7 woodland acres on its north side. The Big Mill Farm has 111.48 tillable acres on one section (hereinafter Big Mill Farm A), and 237.82 tillable acres, 33.35 woodland acres and "other" land, and 41.35 acres of impounded water (the Big Mill Pond) on the remainder of the farm (hereinafter Big Mill Farm B). The Vincent or Linkwood Farm[2] has 122.7 tillable acres and 24.92 woodland acres. The 68.75-Acre Farm has 60 tillable acres and 8.75 woodland acres. The farm properties comprise different grades or qualities of tillable soils.

The decedent died testate, and his will was probated with the Register of Wills for Dorchester County, Maryland. The decedent devised the farm properties to a residuary trust, which is directed to administer and manage the farm properties as farming operations. Pursuant to the decedent's will, net annual income from the farming operations

---

[1]All section references are to the Internal Revenue Code of 1954 as amended and in effect as of the date of the decedent's death, unless otherwise indicated.

[2]The decedent owned a one-half interest in this farm as tenant in common with Roland W. Webster.

is distributed as follows: 30 percent to the decedent's daughter, Susan Bland Thompson Taylor, for life; 30 percent to the decedent's other daughter, Helen Thompson Nicholas, for life; the lesser of 2 percent or $2,000 to Marie S. Brittingham, an individual who is not a qualified heir within the meaning of section 2032A(e)(1), until her death or remarriage, and 2 percent of the net profits of the preceding fiscal year to the members of the trust advisory committee in equal shares. The remaining income is held in reserve by the trust for improvements or reinvestment in the farming operations at the discretion of the trustees. If such expenditures are unnecessary, the income is to be divided into two equal shares and distributed to the decedent's two daughters.

Upon the death of the last survivor of Taylor, Nicholas, and Brittingham, the trust will terminate and the corpus of the trust will be distributed as follows:

all real and personal property, principal and income constituting the trust shall be divided in two equal shares, each share to be distributed in the manner as each of my respective daughters, who shall leave issue, may have appointed by their Will, among those of my issue, or any religious, charitable, scientific, literary, or educational corporation qualifying as such for purposes of the Federal Estate Tax. Such appointment may be for life or for such other estates as such child may choose, and it may be made subject to lawful spend thrift provisions. Either of my aforenamed daughters may at any time or from time to time during her life, release this power of appointment with respect to any or all of the property subject thereto. In default of an effective exercise of this power by any child of mine who survives me, the principal of the share held in trust for each child, or such part thereof not effectively appointed, shall be paid or distributed per stirpes among the issue of each of my daughters who shall survive her or in the event either of my daughters leaves no issue among the surviving issue of the other daughter per stirpes.

On February 6, 1983, Taylor and Nicholas each executed a partial disclaimer, filed with the Register of Wills of Dorchester County, Maryland, disclaiming their power to appoint their respective distributive shares of the farm properties to other than qualified heirs within the meaning of section 2032A(e)(1). On February 7, 1983, Brittingham executed a disclaimer, filed with the Register of Wills of Dorchester County, Maryland, disclaiming her 2-percent life

interest in the net annual income from the farm properties.[3] Brittingham was paid $18,000 consideration by Taylor and Nicholas for executing her disclaimer.

On its Federal estate tax return, petitioner elected special use valuation pursuant to section 2032A for the south side of the Middletown Branch Farm and the Big Mill Farm A. Petitioner's estate tax return reports the following fair market values and special use values for the farm properties:

| Property | Fair market value | Sec. 2032A value |
| --- | --- | --- |
| Middletown Branch Farm | | |
| (a) South Side | | $268,000 |
| (b) North Side | $389,195 | |
| Big Mill Farm | | |
| (a) Farm A | | 59,307 |
| (b) Farm B | 511,580 | |
| Vincent or Linkwood Farm | 34,420 | |
| 68.75-Acre Farm | 117,500 | |

Jeffrey P. Williamson prepared an appraisal filed with the Federal estate tax return. This appraisal reports the respective fair market values of the farm properties determined without regard to special use valuation as follows:

| Property | Fair market value |
| --- | --- |
| Middletown Branch Farm | $1,225,939 |
| Big Mill Farm | 703,883 |
| Vincent or Linkwood Farm (one-half interest) | 34,420 |
| 68.75-Acre Farm | 117,500 |

Respondent relies on the fair market values of the farm properties as determined by Williamson. In his notice of deficiency, respondent determined that the fair market value of the Vincent or Linkwood Farm was $51,420, but he now argues that the fair market value of this farm is $34,420.

Petitioner filed an amended Federal estate tax return on behalf of the Estate of James U. Thompson on or about January 16, 1986. In the amended return, petitioner did not elect to use section 2032A special valuation, but in general reported lower fair market values for the farm properties than were reported in petitioner's original return. At the

---

[3]The disclaimer is styled "Partial Disclaimer." However, Brittingham disclaimed her entire interest in the net annual income from the farm properties.

trial of this case petitioner presented an additional appraisal of the fair market value of the farm properties based on a report prepared by Larry L. Mills. Mills' report lists the following fair market values for the farm properties determined without regard to special use valuation:

| Property | Fair market value |
| --- | --- |
| Middletown Branch Farm | $929,000 |
| Big Mill Farm | 525,000 |
| Vincent or Linkwood Farm | 28,500 |
| 68.75-Acre Farm | 77,000 |

Farmland lying south of Route 50, a U.S. highway, is some of the most productive land in Dorchester County. The farm properties are located in this general region. Farmland in the "Shiloh area," lying primarily in the northeast section of Dorchester County, must be irrigated to achieve comparable productivity.

Land which is cleared of timber may require 3 to 5 years of preparation and cultivation before reaching full productivity as tillable land. Its soil is generally acidic, and requires application of lime to reduce the soil's acidity. Because soil can only absorb a certain amount of lime per year, the application of lime must be repeated from year to year until the soil's productivity as tillable farmland is maximized.

## OPINION

Section 2032A permits the estate of a decedent who was a citizen or resident of the United States to elect to value qualified real property on the basis of its use as a farm or other business. In general, qualified real property is property located in the United States which passes from the decedent to a qualified heir, and which satisfies the use requirements of section 2032A(b). A qualified heir is a member of the decedent's family who acquires property from the decedent. Sec. 2032A(e)(1).

The parties agree that Taylor and Nicholas are qualified heirs and that Brittingham is not. Further, Taylor and Nicholas had the power to appoint the property to persons other than qualified heirs. The parties also agree that the property for which petitioner seeks to elect special use valuation is qualified farm property which satisfies the use

requirements of section 2032A(b).[4] The issue we must decide is whether the disclaimer executed by Brittingham caused the properties to "pass" from the decedent to qualified heirs for purposes of qualifying for special use valuation.

Respondent argues that the decedent's will fails to comply with the provisions of section 2032A because it devises a life interest in the net annual income from the farm properties to Brittingham, who is not a qualified heir.[5] Respondent contends that the disclaimer executed by Brittingham fails to remedy this defect.

Petitioner contends that Brittingham properly disclaimed any interest that would disqualify the properties for the special use election. Consequently, petitioner contends that the properties would "pass" from the decedent only to qualified heirs and that the estate is, therefore, entitled to elect special use valuation pursuant to section 2032A. For the reasons discussed below, we agree with respondent.

Section 2032A requires that property for which special use valuation is elected must pass from the decedent to qualified heirs. Brittingham is not a qualified heir, and consequently (1) if the life income interest acquired by Brittingham represents an ˌinterest in the property for which special use valuation is sought, and (2) that interest passed to her, the property is not "qualified real property" within the meaning of section 2032A(b).

An interest in property for which special use valuation is elected, for purposes of section 2032A, is defined by respondent's regulations as:

an interest which, as of the date of the decedent's death, can be asserted under applicable local law so as to affect the disposition of the specially valued property by the estate. [Persons holding such an interest include] owners of remainder and executory interests, the holders of general or special powers of appointment, beneficiaries of a gift over in default of exercise of any such power, co-tenants, joint tenants and holders of other undivided interests when the decedent held only a joint or undivided interest in the property or when only an undivided interest is specially

---

[4]Petitioner elected special use valuation on the original Federal estate tax return filed on behalf of the decedent. An agreement bearing the signatures of persons in being with an interest in the specially valued property, required by sec. 2032A(d), is not in the record. Respondent does not, however, challenge petitioner's compliance with the requirements of sec. 2032A(d).

[5]Because of our disposition of this issue, we do not reach the question of the effect on special use valuation of Taylor and Nicholas' power of appointment or of their partial disclaimers.

valued, and trustees of trusts holding any interest in the property. An heir who has the power under local law to caveat (challenge) a will and thereby affect disposition of the property is not, however, considered to be a person with an interest in property under section 2032A solely by reason of that right. Likewise, creditors of an estate are not such persons solely by reason of their status as creditors. [Sec. 20.2032A-8(c)(2), Estate Tax Regs.]

As a life beneficiary of part of the trust income, Brittingham is entitled to invoke the protection of the State courts to preserve the income producing function of the property. *In re Clarke's Will*, 81 A.2d 640, 198 Md. 266 (1951). The trustees of the trust are bound to maximize the income to the life beneficiaries without impairing the interest of the remainderman in the trust's principal. *Maryland National Bank v. Merson*, 249 Md. 353, 239 A.2d 905 (1968); see also *Shipley v. Crouse*, 279 Md. 613, 370 A.2d 97 (1977). Brittingham may require an accounting by the trustees and may require the trustees to post bond to protect her life income interest in the trust property. *In re Clarke's Will, supra.* It does not appear that the $2,000 limit on Brittingham's income interest adversely affects these rights under State law. Brittingham's interest in the lesser of 2 percent or $2,000 of the annual income earned by the farm properties is a vested interest. The possibility of subsequent divestment if she were to remarry does not appear to affect the vested nature of the interest she was devised or to cause the interest to be, under State law, something other than an interest in the property. By contrast, the property interests devised in *Estate of Davis v. Commissioner*, 86 T.C. 1156 (1986), and *Estate of Clinard*, 86 T.C. 1180 (1986), on which petitioner relies, were contingent interests with a remote and speculative possibility of vesting in other than qualified heirs. The income interest devised to Brittingham, who is not a qualified heir, is a vested interest that affects the disposition of the property under the terms of the decedent's will. Accordingly, pursuant to section 20.2032A-8(a)(2), Estate Tax Regs., petitioner may not elect special use valuation pursuant to section 2032A unless Brittingham effectively disclaimed her interest.

Petitioner argues that Brittingham effectively disclaimed her life income interest, and that therefore the estate is

entitled to elect special use valuation for the properties at issue. Section 2046 incorporates, for Federal estate tax purposes, the provisions of section 2518, governing disclaimers of property interests for Federal gift tax purposes. Section 2518 provides in general that a qualified disclaimer of an interest in property is an irrevocable and unqualified refusal by a person to accept such property interest. The disclaimer must be in writing, and must be received by the transferor or his agent within 9 months of the date the transfer creating the property interest takes place. Sec. 2518(b)(1), (2). The disclaimant must not direct or control the passing of the interest disclaimed. Sec. 2518(b)(4). Brittingham's disclaimer satisfies all of these requirements but suffers from one fatal failure: she accepted the benefits of the interest disclaimed. Sec. 2518(b)(3).

Respondent's regulations provide that the "acceptance of any consideration in return for making the disclaimer is an acceptance of the benefits of the entire interest disclaimed." Sec. 25.2518-2(d)(1), Gift Tax Regs. This precept recognizes that receiving money in exchange for the disclaimer in substance is a sale of the property which, for State law purposes, has been renounced. Consequently, if Brittingham received consideration for her disclaimer, the disclaimer must be regarded as ineffective for Federal estate tax purposes generally and for purposes of section 2032A specifically. Brittingham executed her disclaimer in return for the payment of $18,000 by Taylor and Nicholas. The amount of consideration was based upon the actuarial value of the interest disclaimed by Brittingham, as determined by the parties.

Petitioner suggests that we should disregard Brittingham's receipt of this consideration arguing that Taylor and Nicholas paid it in their individual capacities, not on behalf of the estate, and did not "compromise the farm holdings of the decedent's estate." This argument avoids the central issue; for purposes of section 2518 and its accompanying regulations, Brittingham received the estimated value, in cash, of her interest in the properties' future income as intended by decedent. Consequently, Brittingham's disclaimer of her interest in the property was not a "qualified disclaimer" within the meaning of section

2518. The south side of Middletown Branch Farm and Big Mill Farm A, therefore, did not "pass" solely to qualified heirs and are not "qualified real property" within the meaning of section 2032(A)(b)(1).

We now turn to consider the fair market value of the farm properties. Section 2031 includes in a decedent's gross estate the fair market value, as of the date of death, of all of the decedent's real and personal property. Petitioner argues that the fair market value of the farm properties was inflated on the original estate tax return. Respondent argues that the fair market value of the farm properties was reported correctly on petitioner's original Federal estate tax return.

The fair market value of property is defined as "the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts." Sec. 20.2031-1(b), Estate Tax Regs. The fair market value of real property is determined by reference to its highest and best use. *Kaplan v. United States*, 279 F. Supp. 709 (D. Ariz. 1967). The parties agree that the highest and best use of the farm properties was agricultural. Soil quality, size, and location are important features affecting the agricultural property's value.

Both petitioner's expert (Mills) and respondent's expert (Williamson) base their respective determinations of the fair market value of the farm properties using the comparable sales method of valuation. See *Estate of Frieders v. Commissioner*, 687 F.2d 224 (7th Cir. 1982), affg. a Memorandum Opinion of this Court; *Estate of Brown v. Commissioner*, 425 F.2d 1406 (5th Cir. 1970), affg. a Memorandum Opinion of this Court. The experts determined the fair market value of the tillable and woodland acres of the farm properties by reference to what each expert believed were sales of comparable properties.

Mills' report was prepared in January 1987. Mills examined 25 sales in the Dorchester County region that he believed were comparable to the farm properties. Mills testified that he made adjustments to the value of the comparable sales to reconcile differences in soil quality, size, and location between the comparable properties and the

farm properties.[6] However, Mills' report does not identify any of the specific adjustments made. Mills concludes that the per acre and total fair market values of the farm properties are as follows:

| Property | Per acre value | | | Total fair market value (rounded per Mills) |
| | Tillable | Woodland | "Other" | |
|---|---|---|---|---|
| Midland Branch Farm (689.1 acres tillable, 195.26 acres woodland, 120 acres "other") | $1,200 | $400 | $200 | $929,000 |
| Big Mill Farm[1] (349.3 acres tillable, 41.35 acres pond, 33.35 acres "other") | 1,400 | N/A | 250 | 525,000 |
| Vincent or Linkwood Farm[2] (118 acres tillable, 29.62 acres woodland) | 1,800 | 600 | N/A | 28,500 |
| 68.75-Acre Farm (55 acres tillable, 14 acres woodland) | 1,300 | 400 | N/A | 77,000 |

[1]The value of the Big Mill Farm includes the value as of May 1982 of an irrigation system appraised at $28,000, reflecting 40 percent of the cost of the equipment's acquisition in 1975.

[2]The appraised value of the decedent's one-half interest includes the value as of May 1982 of an irrigation system appraised at $64,000 (the full cost of acquisition of the equipment in 1980). The value of the farm has been reduced by the balance of a mortgage on the farm property in the amount of $237,160.

Mills' report does not indicate how his comparable sales were utilized to derive the per acre fair market values for tillable and woodland acres of the farm properties. Although Mills testified that he made certain adjustments to his chosen comparable sales for differences in property size, location, soil quality, and other variables, his report does not reflect these adjustments. Mills' report also does not analyze the relative weight ascribed to various comparable sales in ascertaining the fair market value of the farm properties.

Three of the comparable sales in Mills' report occurred after the date of death of the decedent.[7] Mills made no

[6]Two properties that were sold well after the decedent's date of death were adjusted further to account for the differences in time.

[7]Respondent argues that events occurring subsequent to the valuation date may not be considered in valuing the subject property unless the subsequent events could reasonably be

adjustment to one sale that closed 10 months after the decedent's death. Mills increased the value of two post death sales to reflect a downward trend in the market for farmlands that began in 1983. Mills increased the price of one sale that took place in June of 1984 by 20 percent and another that occurred in March of 1986 by 40 percent. Mills further increased the price of the June 1984 sale by an additional 20 percent to reflect the fact that the sale was a foreclosure sale. He could not, however, describe his methodology in making the adjustments, and we have concluded that the adjustments are speculative. Consequently, we do not accept these sales as valid comparables. The foreclosure sale is especially lacking as a comparable, and Mills' "adjustments" do not make it so.

Certain other properties that formed the basis of Mills' valuation are also not comparable to the farm properties. These properties are small farms under 75 acres which by virtue of their size could have been acquired for homestead or hunting purposes, rather than for farming purposes. It is inappropriate to utilize such sales as comparable sales to determine the fair market value of land used for farming.

Mills appraised at $17,500 the value of a homesite and improvements on property which sold for $425,000, and which Mills utilized as a comparable sale in determining the fair market value of the farm properties.[8] The purchaser, however, ascribed no value to the improvements, which he tore down after acquiring the property. As a result, Mills'

---

contemplated or were in fact known as of the date of valuation. See *Estate of Gilford v. Commissioner*, 88 T.C. 38, 52-54 (1987); *Estate of Jephson v. Commissioner*, 81 T.C. 999 (1983); *Estate of Smith v. Commissioner*, 57 T.C. 650 (1972), affd. 510 F.2d 479 (2d Cir. 1975). Our task, however, is to determine the fair market value of the properties at issue. This is an objective determination, and if comparable sales occur after the death of decedent, there is no sound reason to ignore them. There are no "uncertain probabilities" or contingencies in this case which affect the value of the farm properties. See *Morris v. Commissioner*, 761 F.2d 1195 (6th Cir. 1985), affg. a Memorandum Opinion of this Court. Therefore, for purposes of determining fair market value, we believe it appropriate to consider sales of properties occurring subsequent to the valuation date if the properties involved are indeed comparable to the subject properties.

[8]Under the comparable sales method of valuation, ascribing value to improvements on a given property lowers the appraised value of the tillable land. The value of a given element of the property sold—e.g., tillable lands, woodlands, or improvements—is dependent upon the value ascribed to the other elements of the property. Since the purchase price of the comparable property is a fixed figure, a higher value ascribed to one element necessarily implies ascribing a lower value to the other elements.

appraisal of the per acre value of tillable land sold is unrealistically low.

On cross-examination it became clear that Mills neither inspected the properties he selected as comparables nor discussed the sales with the purchasers or sellers involved, and as a result, failed to account for certain important, distinguishing features of those properties that impair their usefulness as comparables. Further, though Mills states that the Middletown Branch Farm contains soils in the top three (of six) categories of soil quality, he values the tillable lands of the Middletown Branch Farm at $1,200 per acre, which is a value lower than what he determined for the lowest quality soils in his selected comparables. Mills appraises the Vincent or Linkwood Farm below its acquisition cost, yet there was no decline in the market for farmland in the region until 1983.

We conclude that Mills' report contains a number of shortcomings that render his conclusions unreliable. For the reasons discussed below, we believe that Williamson's determinations accurately reflect the fair market value of the farm properties.

Williamson's report was prepared in September 1982. Williamson examined 11 sales of comparable properties, some of which were also examined in Mills' report. Williamson selected comparable property sales which in his view required a minimum number of adjustments to compensate for the differences between his selected comparables and the farm properties. Williamson's adjustments are detailed in his appraisal report, and he indicates the relative weight he applied to each comparable property in opining on the fair market values for the farm properties. Williamson interviewed several individuals involved in the sales of the comparable properties to determine the factors important to the purchasers in acquiring their properties. In addition, Williamson walked through the farm properties and made other diligent efforts to investigate the value of farm property in the region.

Williamson concluded that the per acre and total fair market values for the farm properties were as follows:

| | Per acre value | | Total fair market value (rounded per |
|---|---|---|---|
| Property | Tillable | Woodland | Williamson) |
| Middletown Branch Farm[1] | $1,550 | $400 | $1,225,000 |
| (690.1 tillable acres, 315.26 woodland acres) | | | |
| Big Mill Farm[2] | 1,725 | 400 | 700,000 |
| (349.3 tillable acres, 33.35 woodland acres) | | | |
| Vincent or Linkwood Farm[3] | 2,200 | 400 | 34,420 |
| (122.7 tillable acres, 24.92 woodland acres) | | | |
| 68.75-Acre Farm | 1,900 | 400 | 117,500 |
| (60 tillable acres, 8.75 woodland acres) | | | |

[1]The indicated fair market value of the Middletown Branch Farm includes the value of a dwelling and certain site improvements appraised at $30,000. Williamson included in his appraisal an additional tillable acre, representing the dwelling site which was not included in Mills' appraisal.

[2]The indicated fair market value of the Big Mill Farm includes the contributing value of an irrigation system and pond appraised at $400 per acre for 220 acres.

[3]The value of decedent's half interest in the property was reduced by his proportionate share of the balance of the mortgage on the property in the amount of $237,160. Mills included the contributing value of an irrigation system appraised at $550 per acre for 110 acres.

Petitioner argues that Williamson relies too heavily on sales from the "Shiloh area" of Dorchester County. Petitioner, arguing that the highest quality soil is in the Shiloh region, contends that the land values are higher in the Shiloh area than that area in which the farm properties are located. Williamson principally relied, however, on sales in regions other than the "Shiloh area." Moreover, as land in the Shiloh area must be irrigated to achieve levels of productivity comparable to land in the region of Dorchester County in which the farm properties are located, its value is less than land which does not require irrigation.

We found Williamson to be a credible witness. His conclusions and reasoning are well documented in his report, and he withstood rigorous cross-examination at trial. We find none of the shortcomings of Mills' report to be present in Williamson's report. Close study of Williamson's report leads us to conclude that his determinations of fair market value and the acreage to which they apply are reasonable and solidly supported. Therefore, we conclude that the fair market values of the respective farm properties

as determined by respondent and as reported on petitioner's original Federal estate tax return are correct.

Because of concessions,

*Decision will be entered pursuant to Rule 155.*